[Civ. No. 18413. First Dist., Div. Two. July 12, 1960.]

ANNE ELIZABETH GOTTSDANKER, a Minor, etc., et al., Plaintiffs and Appellants, v. CUTTER LABORATORIES (a Corporation), Defendant and Appellant.

[Civ. No. 18414. First Dist., Div. Two. July 12, 1960.]

JAMES RANDALL PHIPPS, a Minor, etc., et al., Plaintiffs and Appellants, v. CUTTER LABORATORIES (a Corporation), Defendant and Appellant.

Belli, Ashe & Gerry for Plaintiffs and Appellants.

Max Thelen, Jr., Paul R. Haerle and Thelen, Marrin, Johnson & Bridges, as Amici Curiae on behalf of Plaintiffs and Appellants.

Moses Lasky, Robert S. Daggett, Brobeck, Phleger & Harrison, Keith, Creede & Sedgwick, Wallace E. Sedgwick, Scott Conley, James L. Gault and Sedgwick, Detert, Moran & Arnold for Defendant and Appellant.

William Barclay Lex, Peart, Baraty & Hassard, Howard Hassard, Paul L. O'Brien, Arthur B. Hanson and John K. Worley, as Amici Curiae on behalf of Defendant and Appellant.

DRAPER, J.—Two children contracted poliomyelitis shortly after being inoculated with Salk vaccine manufactured by defendant. On the premise that defendant's vaccine caused the illness it was designed to prevent, an action for damages was brought in behalf of each child. The actions were consolidated for trial. Jury verdicts were in favor of the two children for a total of $139,000, and for their parents for $8,300 in special damages.

There is substantial evidence to sustain a finding that the vaccine contained live virus of poliomyelitis, and that the injected vaccine caused the disease in each child. The essence of plaintiffs' claim is not that the vaccine failed to prevent· polio, but that it actually and directly caused it.

Three causes of action were submitted to the jury in each case. One was in negligence, one for breach of an implied warranty of merchantability and one for breach of implied warranty of fitness for the intended purpose. But only two forms of verdict were presented to the jury in each case, one for the plaintiff generally, without separation of the causes of action, and one for the defendant.

In returning its verdicts for plaintiffs, however, the jury drew a thoughtful and careful statement, setting forth that the jury had first considered the issue of negligence, and had "from a preponderance of the evidence concluded that the defendant, Cutter Laboratories, was not negligent either directly or by inference."

"With regard to the law of warranty, however, we feel that we have no alternative but to conclude that Cutter Laboratories came to market . . . vaccine which when given to plaintiffs caused them to come down with poliomyelitis, thus resulting in a breach of warranty. For this cause alone we find in favor of plaintiffs."

In accordance with this jury statement, judgments were entered in favor of plaintiffs on the two causes of action for breach of implied warranty, and in favor of defendant on the counts for negligence. Defendant appeals from the judgments against it. Plaintiffs appeal from the judgments against them on the causes of action for negligence, asserting that the jury's written statement must be disregarded as sur-

plusage, leaving only the signed verdict forms in favor of plaintiffs on the complaints generally, and that the evidence is insufficient to support verdicts against plaintiffs on the issue of negligence.

Defendant's appeal squarely presents the question whether implied warranties of merchantability and of fitness apply under the facts of this case.

The vaccine administered to each child was purchased by a doctor from a pharmacy in a sealed bottle or ampule. In one case the hypodermic injection of the vaccine was made by a doctor, in the other by a nurse under a doctor's direction. Neither doctor was joined as a defendant. One pharmacy was joined, but later dismissed. Thus the judgments are against defendant pharmaceutical manufacturer only.

A principal question is whether defendant manufacturer can be liable upon implied warranty in the absence of direct sale from it to plaintiffs. ▮▮▮ Historically, liability in implied warranty sounds in tort, and it can be reasoned that the true basis of such recovery now lies in tort, rather than contract (see Prosser on Torts, 2d ed., 493). Nonetheless, "privity of contract" (i.e., direct sale from defendant to plaintiff) remains a requirement for implied warranty liability in substantially all American jurisdictions. This rule is followed in California as to most manufactured products (*Burr* v. *Sherwin-Williams Co.*, 42 Cal.2d 682 [268 P.2d 1041]), although the modern trend is to modify the strictness of the requirement in some situations (*Peterson* v. *Lamb Rubber Co.*, 54 Cal.2d 339 [5 Cal.Rptr. 863, 353 P.2d 575]). ▮▮▮ However, where the product is food for human consumption, a number of jurisdictions have recognized an exception to the privity requirement. In such cases, it is held that the manufacturer or initial seller may be held liable to the ultimate consumer even though there have been intermediate sales by one or more dealers. Although this is the minority rule, it is followed in some 15 to 18 states. (Prosser on Torts, 2d ed., 508-9; 1 Williston on Sales, rev. ed., 647-8.)

California clearly accepted this exception in 1939. (*Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799].) The court flatly rejected the contention that an implied warranty in food cases runs "only from an immediate seller to an immediate buyer." The court reviewed cases from other jurisdictions and pointed out that varying theories are advanced in support of the exception. *Klein* particularly emphasizes the public policy of requiring that only wholesome food be sold for human consumption. The rule continues

to be followed in California. (*Vaccarezza* v. *Sanguinetti,* 71 Cal.App.2d 687 [163 P.2d 470].)

█ In view of the established California rule that the consumer of a food product may recover from the manufacturer upon implied warranty, is there any reason to apply a different rule to the vaccine here involved? We think not. The vaccine is intended for human consumption quite as much as is food. We see no reason to differentiate the policy considerations requiring pure and wholesome food from those requiring pure and wholesome vaccine. Some significance may attach to the fact that *Klein* (p. 277) quotes a decision (*Rachlin* v. *Libby-Owens-Ford Glass Co.,* 96 F.2d 597, 600) which states that the privity exception extends to "medicines and foodstuffs." *Klein* also relies upon the several pure food and drug acts as indicating the public policy which underlies the rule. We can conceive of no reason for applying the rule to foodstuffs which does not equally extend to drugs. The vaccine here involved is, like food products, designed solely for introduction into the body of a human being.

The fact that the entry is made by injection rather than ingestion in no way alters the premise that each is for human consumption—each enters the human system. In fact, the digestive system has means of rejecting or minimizing the effects of many toxic compounds taken orally. Such defenses are much less available as against harmful elements introduced into the system by hypodermic injection.

We find no decision directly upon the point. Defendant cites trial court decisions from other jurisdictions (*Russo* v. *Merck & Co.,* 138 F.Supp. 147; *Wechsler* v. *Hoffman-La Roche, Inc.,* 99 N.Y.S.2d 588; *Dumbrow* v. *Ettinger,* 44 F.Supp. 763) holding that blood plasma or drugs are within the privity requirement. But all these jurisdictions apply the requirement of privity in all implied warranty cases, without exception. Thus, these decisions are of no aid here, where the real question is whether the food exception reasonably should apply to vaccine.

In this jurisdiction which holds that the implied warranties run with food products to the ultimate consumer we find no reason to exclude drugs from the rule. We have no hesitance in holding that the absence of privity does not bar recovery on implied warranty from the manufacturer of the vaccine here in issue.

█ Defendant, however, contends that even if privity is not required, there can be an actionable implied warranty

only if the plaintiff is himself a purchaser. It says that in the absence of a sale to and a purchase by the plaintiff, there is no "vehicle to carry an implied warranty" by the manufacturer. Upon this premise, it cites cases from other jurisdictions for the rule that the furnishing of blood by a hospital carries no implied warranty because it constitutes a rendition of service, and not a sale of the blood. (*Perlmutter* v. *Beth David Hospital*, 308 N.Y. 100 [123 N.E.2d 792]; *Gile* v. *Kennewick Public Hospital District*, 48 Wn.2d 774 [296 P.2d 662, 59 A.L.R.2d 761].) The latter case is not strong, because the true claim of plaintiff was that the hospital had been negligent in typing the blood of the decedent. Thus recovery was barred by the Washington statute exempting hospital districts from liability for negligence. *Perlmutter*, however, does stand for the proposition urged. Defendant next argues, by analogy, that the transaction between doctor and plaintiff in each of our cases is not a sale. We are more ready to accept the analogy than the basic argument. In any event, we assume that there was no sale of defendant's vaccine from the doctor who administered or supervised the inoculation to either plaintiff herein. However, we cannot agree that this disposes of the case.

It seems clear that the implied warranties of fitness and of merchantability are enforceable only against a seller. These warranties are based upon the code provision (Civ. Code, § 1735) adopted as a part of the Uniform Sales Act. But it is of the essence of the food exception to the privity rule (which we have held equally applicable to vaccines) that the sale need not be from the manufacturer to the consumer. While the manufacturer of foods or drugs is not liable as a warrantor unless he has made a sale, we see no reason to hold that he escapes liability because the ultimate consumer, whose use of the product is the essential consideration in its manufacture for the market, is not a purchaser under a contract of sale. It is significant that in the leading California case permitting warranty recovery without privity in food cases (*Klein* v. *Duchess Sandwich Co., Ltd., supra,* 14 Cal.2d 272), the plaintiff was not the purchaser. Her husband had bought the sandwich which she ate. In another decision on this subject (*Vaccarezza* v. *Sanguinetti, supra,* 71 Cal.App.2d 687), two of the three plaintiffs were minors, and their parents appear to have been the purchasers of the food there involved. While each of these cases involved family relationship of purchaser and consumer-plaintiff, this does not appear to have been

a controlling factor. In *Klein,* the court emphasized (p. 284) that "the warranty extended to *every consumer,*" by italicizing the words "every consumer." The vaccine here used was manufactured for the express purpose of supplying doctors who would inject it into the bodies of persons seeking inoculation against poliomyelitis. Clearly it is the patient, and not the doctor, who is the ultimate consumer of the vaccine.

While a sale is essential to impose liability under the implied warranties, the initial sale to distributor or retailer of pharmaceuticals is sufficient to impose upon the manufacturer the responsibility of fulfilling the implied warranties which run to the benefit of the persons whom the manufacturer intended to be, and who in fact became, the "consumers."

Defendant argues further, however, that distribution of its vaccine cannot, under the code, be deemed a sale. The section relied upon (Health & Saf. Code, § 1623) provides that "The procurement, processing, distribution or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same . . . into the human body" is and shall be construed to be "the rendition of a service by each and every person, firm or corporation participating therein," and "shall not be construed to be, and is declared not to be, a sale . . . for any purpose . . . whatsoever."

This section, adopted at the 1955 session of the Legislature, may well stem from the decision in *Perlmutter* v. *Beth David Hospital, supra,* 308 N.Y. 100 [123 N.E.2d 792], which was filed December 31, 1954. But if this be true, and if we accept defendant's contention that the code section is designed to bar the application of implied warranties to the products described in the section, defendant's case is not aided, for the evidence does not remotely suggest that the vaccine here used is within the compass of the code section. At most, it is claimed that horse serum, a component of horse blood, is used as part of a culture medium for the growth of cells of monkey kidney tissue, to which poliomyelitis virus is added, allowed to grow and multiply, and then is inactivated to form the vaccine. This is a far cry from the "whole blood, plasma, blood products, and blood derivatives" which the statute declares not to be the subject of sale.

The code section upon which defendant relies is contained in the chapter entitled "biologics." The definition of bio-

logics (Health & Saf. Code, § 1601), in addition to "whole blood and blood derivatives," includes "serum, vaccine, live vaccine, killed vaccine, tissue vaccine, autogenous vaccine, live virus, killed virus" and many others. It strains construction unreasonably to suggest that the Legislature, in choosing from this long list the products whose distribution would not constitute a sale, meant to include in the language of section 1623 a vaccine developed in part from a culture including serum. Much more apt language could be chosen from the legislative definition of biologics. The exclusion of this language from section 1623 is significant, and disposes of defendant's contention that the latter section prohibits consideration of the vaccine here in issue as the subject of a sale.

Even less tenable is defendant's contention that section 1623 is in some way designed to exclude biologics generally from application of the sales act and the implied warranties imposed by it.

Defendant argues that printed "directions" accompanying boxes of its vaccine constituted an express warranty, and thus negative the existence of any implied warranty. But "An express warranty . . . does not negative a warranty . . . implied under this act unless inconsistent therewith" (Civ. Code, § 1735, subd. (6)). Wholly aside from the question whether the directions constitute an express warranty within the statutory definition (Civ. Code, § 1732), they must be inconsistent with the implied warranties to have the effect contended for by defendant. The mere making of an express warranty, however detailed, does not negate the implied warranties except to the extent that it is inconsistent with them (1 Williston on Sales (rev. ed.) 625-628). We must bear in mind that " (a)n express warranty is generally executed for the protection of the buyer, not to limit the liability of the seller" (1 Williston, *supra,* 626). We find nothing in the "directions" inconsistent with the implied warranties of fitness and merchantability. The bulk of the printed material deals with the lack of preservatives in the vaccine, dosage, and means of administration, none of which in any way relate to the facts in issue in this case.

Defendant relies upon the statement of the directions that "This vaccine is prepared in accordance with the requirements of the National Institutes of Health of the U. S. Public Health Service," and the further statement that "Local and other untoward reactions have been very minimal using this material." In the context of the directions as a

whole, it is impossible to find in this language a disclaimer that the vaccine is fit for its purpose and is merchantable. The word "minimum" which is used by the Public Health Service to modify the word "requirements" in its own statement is significantly omitted. The phrase "local and other untoward reactions" hardly is sufficient to suggest the presence of live polio virus. In fact, the directions themselves contain the statement "The virus is inactivated with formaldehyde." Thus the directions in no way imply the presence in the vaccine of live poliomyelitis virus. On the contrary, they affirmatively represent that the virus has been inactivated, and thus are completely consistent with the implied warranties here in issue.

We find no way to conclude from the directions that they were intended by defendant to negative the implied warranties that the vaccine was wholesome and free from active virus. *A fortiori*, there is no reason to conclude that the directions imparted to plaintiffs, their parents or their doctors any such impression. The directions do contain a clear disclaimer as to the efficacy of the vaccine, but that is not an issue here. Plaintiffs do not claim that the vaccine failed to protect them against poliomyelitis. They do assert that the vaccine itself caused the disease.

Defendant contends that there was no reliance upon its skill and judgment. Although this argument would seem to apply only to the warranty of fitness for a particular purpose, rather than to that of merchantability (see Civ. Code, § 1735) it cannot avail here. The issue of reliance was submitted to the jury and, on substantial evidence, determined adversely to defendant.

Defendant strongly argues that public policy will best be served by denying recovery in warranty for "new" drugs. The argument is that development of medicines will be retarded if manufacturers are held to strict liability for their defects. While this argument might have merit if the warranty involved had to do with the mere failure of a medicine to cure or of a vaccine to prevent, it seems to be of but little weight where, as here, the warranty is limited to an assurance that the product will not actively cause the very disease it was designed to prevent. In any case, defendant's own argument is that the Legislature has indicated a full awareness of the problem by the statute (Health & Saf. Code, § 1623) providing that the distribution of blood and blood plasma is not a sale. If a sound public policy requires

extension of this exception to biologics generally, or to polio vaccine specifically, the argument properly is one for the Legislature. For the courts to extend the legislative exemption would, in view of the statutory recognition of the problem, amount to judicial legislation.

 Defendant asserts error in the refusal of the trial court to instruct as to the responsibility of a manufacturer to one unusually susceptible to poliomyelitis. But there is no evidence whatever to suggest, even remotely, any such susceptibility on the part of either plaintiff here. Thus, the instruction was properly refused.

The foregoing discussion disposes of the bases of all the points urged by defendants. Thus it is unnecessary to discuss in detail the many refinements and developments of those points raised in the briefs.

Defendant's vaccine contained live and active poliomyelitis virus. Thus the vaccine was not "wholesome"—it was neither merchantable nor fit for its intended purpose. The jury expressly found that the inoculation of plaintiffs with this vaccine caused them to suffer poliomyelitis. There is substantial evidence to sustain this finding.

No party suggests that on the facts of these cases the measure of damage under the negligence count differs from that under the causes of action for breach of warranty. In view of our affirmance of the judgments on the warranty theory, it is unnecessary to consider plaintiffs' appeal from the judgments adverse to them on the negligence issue.

Judgments affirmed.

Kaufman, P. J., and Good, J. pro tem.,* concurred.

The petitions of plaintiffs and appellants and of defendant and appellant for a rehearing were denied August 11, 1960, and their petitions for a hearing by the Supreme Court were denied September 7, 1960.

---

*Assigned by Chairman of Judicial Council.