102 N.J. Super. 279 (1968)
246 A.2d 11
RUTH NEWMARK AND DUDLEY NEWMARK, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
GIMBEL'S INCORPORATED, A CORPORATION, AND SELIGMAN & LATZ PARAMUS CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1968.
Supplemental Briefs Filed July 30, 1968.
Decided August 7, 1968.
*281 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Herman B. Packer argued the cause for appellants (Mr. Saul Peres, attorney).
Mr. John W. Grady argued the cause for respondents.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiffs Ruth Newmark and Dudley Newmark, her husband, appeal from denial of their motion for judgment in their favor and from a judgment in favor of defendants based upon a jury verdict of no cause for action. For purposes of the present appeal defendants will be considered as one.
Mrs. Newmark sued for injury to her skin and loss of hair following a permanent wave treatment at defendant's beauty parlor. Her husband sued per quod. The trial was before the judge and a jury. There was no transcript, the *282 appeal being submitted to us on a statement of facts approved by the trial court.
From the statement of facts it appears that on November 16, 1963, when Mrs. Newmark, a regular customer, kept her standing weekly appointment to have her hair washed and set at defendant's beauty parlor, she inquired about a permanent wave that was on special sale. She was waited on by one Valente, a beauty technician, who told her that her fine hair was not right for the special permanent and that she needed a "good" permanent wave. She agreed to this. Her hair was then cut, washed and dried after which it was sectioned off and a waving solution was applied with cotton. Then her hair was rolled section by section following which more waving solution was put on with an applicator bottle and a cream was applied along the hairline and covered with cotton. About three to five minutes after the last of the waving solution had been applied she experienced a burning sensation on the front part of her head. Upon her complaint to Valente he added more salve (cream) to that which had already been applied along the hairline. The burning sensation continued but was alleviated when her hair was rinsed in lukewarm water.
The curlers were thereafter removed and a neutralizing solution applied which was allowed to remain about seven minutes, following which her hair was rinsed and then set by Valente and she was put under a dryer. While under the dryer the burning sensation on the top of her scalp returned and persisted for almost the entire 25 minutes that she was there. When she complained Valente turned down the dryer heat, and this gave her some relief. Her hair was then combed and she left with a severe headache which she did not at the time associate with the permanent wave job.
Her forehead became red that evening. On the following day her whole forehead was red and blisters had appeared. An unusually large amount of her hair fell out when it was combed. On the following Tuesday (November 19), she returned to the beauty parlor where Valente gave her *283 a conditioning treatment which he said is given when the hair is dry, and which Mrs. Newmark testified made her hair feel singed at the hairline.
Valente admitted that the permanent wave procedure followed was at his suggestion. It is conceded that the permanent wave solution he used was "Candle Glow," a product of Helene Curtis. Valente testified that the processing products he used were applied as they were taken from the original packages or containers, and that it was common for a customer to feel a burning or tingling sensation when the waving lotion was applied. He stated that persons were affected "in varying degrees" by the treatment. When he began the treatment there was "nothing wrong" with her hair or scalp.
On Friday, November 22, Mrs. Newmark visited a dermatologist who also saw her twice thereafter. He diagnosed her condition as contact dermatitis causally related to the hair solution, and loss of hair following dermatitis. Under his treatment the redness and tenderness of the scalp gradually diminished. After the last visit she continued to take medications at his suggestion. At the time of his deposition (date not indicated) there was still loss of hair on the top of her head and he deposed that he could not definitely estimate the time it would take for this to be replaced. Mrs. Newmark also suffered from anxiety and nervousness due to the loss of her hair.
Defendant's brief recites that the package containing the "Candle Glow" lotion contained an instruction to "Ask the patron her previous experience with cold waves to be sure she does not have a sensitivity to waving lotion." Plaintiffs contend in their reply brief that the complete instructions on the package (as set forth in defendant's answers to interrogatories) were in the form of a warning reading as follows:
"Always wear rubber gloves when giving a wave. Make sure patron's hair and scalp are in condition to receive a cold wave. Never brush or rub the scalp vigorously either before or after shampooing. *284 If the scalp is excessively tender or shows evidence of sores or abrasions, the wave should not be given. Ask the patron her previous experience with cold waves to be sure she does not have a sensitivity to waiving lotion."
Defendant's medical expert, a dermatologist who had examined Mrs. Newmark four months after the incident, noticed a diminution in hair growth in several areas at that time but attributed it to her use of wire brush curlers. He found no scar tissue and on this basis concluded that there was no permanent injury to the scalp.
Plaintiffs' complaint was based upon negligence and breach of implied and express warranties. The court ruled as a matter of law that plaintiffs were not entitled to recover on the basis of breach of either express or implied warranty, and submitted the case to the jury on the issue of negligence only. Plaintiffs moved for a direction of a verdict (judgment) in their favor as to liability and as to the defense of contributory negligence. The former motion was denied and the latter granted. Following the jury's verdict of no cause for action plaintiffs moved for a new trial or, in the alternative, for an order for judgment n.o.v. in their favor on the issue of liability. Both motions were denied.
The core question here presented is whether warranty principles permit a recovery against a beauty parlor operator for injuries sustained by a customer as a result of use on the customer of a product which was selected and furnished by the beauty parlor operator. Defendant concedes in its brief that had the product in question been dispensed by it directly to Mrs. Newmark for home use and subsequently proved defective, Magrine v. Krasnica, 94 N.J. Super. 228 (Cty. Ct. 1967), affirmed sub nom. Magrine v. Spector, et al., 100 N.J. Super. 223 (App. Div. 1967) would support plaintiffs' position. Accord, Griffin v. James Butler Grocery Co., 108 N.J.L. 92, 96-97 (E. & A. 1931). In ruling that warranty did not apply here the trail judge reasoned that the transaction between the parties amounted to the rendition of services rather than the sale of a product, hence defendant *285 could be held liable only for negligence in the performance of such services. Our consideration of the question convinces us that his ruling was a mistaken one.
It would appear clear that the instances in which implied warranties may be imposed are not limited to "sales" that come strictly within the meaning of c. 2 of the Uniform Commercial Code. In the comment to the warranty provision of the latter, N.J.S. 12A:2-313, it is said:
"Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances such as in the case of bailments for hire, whether such bailment is itself the main contract or is merely a supplying of containers under a contract for the sale of their contents. * * *" (at p. 190)
In Cintrone v. Hertz Truck Leasing, 45 N.J. 434, 446 (1965), the court said:
"There is no good reason for restricting such warranties to sales. Warranties of fitness are regarded by law as an incident of a transaction because one party to the relationship is in a better position than the other to know and control the condition of the chattel transferred and to distribute the losses which may occur because of a dangerous condition the chattel possesses. These factors make it likely that the party acquiring possession of the article will assume it is in a safe condition for use and therefore refrain from taking precautionary measures himself. 2 Harper and James, Torts, § 28.19 (1956). Harper and James point out that the presence of such factors in sales set in motion the development of the doctrine of implied warranties. They decry the notion, however, that because the doctrine had its origin in sales, the warranty protection should be withheld in other situations when the same considerations obtain. And they argue persuasively that in the face of present-day forms of business enterprise, development of the warranty doctrine in sales should point the way by suggestive analogy to similar results in cases where a commodity is leased. Id., at p. 1577."
See also Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (1965); Schipper v. Levitt & Sons, 44 N.J. 70 (1965); Totten v. Gruzen, 52 N.J. 202 (1968).
*286 The policy reasons applicable in the case of sales would likewise justify the extension of liability for breach of warranty to any commercial transaction where one person supplies a product to another, whether or not the transaction be technically considered as a sale. See Farnsworth, "Implied Warranties of Quality in Non-Sales Cases," 57 Colum. L. Rer. 653, 662-69 (1957); Magrine v. Krasnica, supra, 94 N.J. Super., at p. 231. The rationale underlying the liability of a retailer for defects in a product obtained from a reputable supplier and sold to a customer, has been explained as follows:
"The argument for the prevailing view points to the strict nature of warranty at common law and under the board terms of the Sales Act, which certainly do not suggest an exception for latent defects. If reliance upon the seller is needed, it may be found in the customer's reliance on the retailer's skill and judgment in selecting his sources of supply. Broader considerations are also urged. The retailer should bear this as one of the risks of his enterprise. He profits from the transaction and is in a fairly strategic position to promote safety through pressure on his supplier. Also, he is known to his customers and subject to their suits, while the maker is often unknown and may well be beyond the process of any court convenient to the customer. Moreover, the retailer is in a good position to pass the loss back to his supplier, either through negotiations or through legal proceedings." 2 Harper and James, Torts, § 28.30, p. 1600 (1956).
Weighing the foregoing policy considerations, we are satisfied and hold that, stripped of its nonessentials the transaction here in question, consisting of the supplying of a product for use in the administration of a permanent wave to plaintiff, carried with it an implied warranty that the product used was reasonably fit for the purpose for which it wts to be used. N.J.S. 12A:2-315.
Mrs. Newmark was a regular customer of defendant and had a weekly appointment to have her hair washed and set. On the day in question she received something in addition  a permanent wave. In essence, it involved application of a permanent wave lotion or solution and thereafter a neutralizer. The lotion was selected by one of defendant's *287 operators who was familiar with her scalp and hair from current examination and prior visits. The product was secured from sources known to defendant and only defendant knew of any special instructions concerning its use. The isk from use of the lotion was incident to the operation of defendant's business, a business which yielded it a profit and placed it in a position to promote safety through pressure on suppliers. It was in a position to protect itself by making inquiry or tests to determine the susceptibility of customers to the use of the product, or by using another lotion which did not present the possibility of an adverse effect. It could secure indemnity from its suppliers through legal proceedings or otherwise. The fact that there was no separate charge for the product did not preclude its being considered as having been supplied to the customer in a sense justifying the imposition of an implied warranty against injurious defects therein.
The facts in Magrine v. Krasnica, supra, on which defendant principally relies, are clearly distinguishable. That case involved a hypodermic needle, a tool of the dental profession, which was never intended to be supplied to the patient or consumed in the course of dental treatment. Here the product supplied to Mrs. Newmark was used up in the process of giving her a permanent wave. While it was later rinsed out, its effect was intended to remain and be part of the finished product. In this respect the case is clearly analogous to Watson v. Buckley, (1940) 1. All E.R. 174 (K.B. 1939) where a hairdresser was held liable for breach of warranty by reason of the defective nature of the hair dye used on plaintiff. See also G.H. Meyers & Co. v. Brent Cross Serv. Co., 1 K.B. 46, 150 L.T.R. 96 (1933) (warranty applied to connecting rods which were installed in a motor and subsequently broke due to defects in their manufacture); Dodd v. Wilson [1946] 2 All E.R. 691 (K.B.) (veterinary surgeon held liable for injuries to cattle caused by a toxoid with which the cattle had been vaccinated).
*288 Defendant also cites Perlmutter v. Beth David Hospital, 308 N. Y 100, 123 N.E.2d 792 (Ct. of App. 1954) and Epstein v. Giannattasio, 25 Conn. Sup. 109, 197 A.2d 342 (Ct. Common Pleas 1963) in support of its position that the transaction here in question did not amount to a sale and hence could not be the subject of a warranty. The holding in the former case, that the furnishing of blood and the giving of it in a transfusion (which later caused hepatitis) did not constitute a sale by a hospital, has not been followed in this State. See Jackson v. Muhlenberg Hospital et al., 96 N.J. Super. 314, 333 (Law Div. 1967). Assuming that it had been, we incline to the view that that case may be better explained on the basis of special policy considerations in favor of hospitals, and on the further ground that there was no way in which the blood could be tested to ascertain that all of the hepatitis strain had been removed. See Magrine v. Krasnica, supra, 94 N.J. Super., at p. 237. Nor are we impressed by the reasoning of the court in Epstein v. Giannattasio. While the transaction there was governed by the Uniform Commercial Code, the court, in ruling on demurrers to the complaint, relied in great part on Perlmutter and on cases involving the service of foods under the former Connecticut Sales Act.
Defendant's brief seeks to sustain the result below on the alternative ground that there was an absence of sufficient proof to establish that the product involved was so defective as to amount to a breach of implied warranty of fitness for purpose. The parties were granted leave to file supplemental briefs on that issue. These have been received and considered by the court. The argument is that plaintiff's injury was the result of a unique allergic reaction on her part to the waving solution, therefore plaintiffs did not establish as part of their case the generally defective nature of the product. Plaintiffs reply that not all the proofs relevant to that issue were set forth in the approved statement of facts since the point stated was not thought to be in issue on the appeal, not having been urged by defendant below.
*289 We need not pursue the procedural question. While the statement of facts presently before us leaves something to be desired, we are satisfied that the jury could have found from the evidence that the product was defective within the intent of the statute. In the first place the record does not show that plaintiff's dermatitis was the result of an allergic attack peculiar to her own sensitivities. Neither medical witness so testified. Second, the product was accompanied by an instruction in the form of a warning from which it could be inferred that its use, in the absence of certain precautions, could adversely affect an appreciable number of persons. Some support for such an inference is found in Valente's testimony that a burning or tingling sensation is fairly common [in such cases] and that each person was affected "in varying degrees." It is conceded that plaintiff testified that she had received permanent wave treatments prior to and for two years subsequent to the incident in question with no adverse effects to her hair or scalp.
Finally, regardless of what the law may be elsewhere, see Annotation, 26 A.L.R.2d 963 (1952), it is settled in New Jersey that the mere fact that only a small proportion of those using a certain product would thereby suffer injury does not absolve the seller from liability on the basis of implied warranty. Zirpola v. Adam Hat Stores, Inc., 122 N.J.L. 21 (E. & A. 1938). In Reynolds v. Sun Ray Drug Co., 135 N.J.L. 475 (E. & A. 1947), where plaintiff had also sustained a skin infection, the court unanimously disallowed the contention that the product there involved (a lipstick) was, as a matter of law, to be regarded as reasonably fit for the purpose for which it was sold, where only a small proportion of those using it would be adversely affected. See also Bianchi v. Denholm & McKay Co., 302 Mass. 469, 19 N.E.2d 697, 121 A.L.R. 460 (Sup. Jud Ct. 1939); Smith v. Burdine's, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115 (Sup. Ct. 1940); Crotty v. Shartenberg's  New Haven, Inc., 147 Conn. 460, 162 A.2d 513 (Sup. Ct. of Err. 1960).
*290 Defendant urges that we overrule Zirpola but that case is an expression of our highest court, reaffirmed later in Reynolds, and we may not do so. Moreover, the rule seems consonant with the more liberal approach our cases have been taking for the protection of the rights of consumers.
It follows that the issue of defendant's liability for breach of implied warranties of fitness for purpose and merchantability should have been submitted to the jury.
Plaintiffs also urge that Valente's assertion that Mrs. Newmark needed a "good" permanent wave, a proposition to which she agreed, amounted to an express warranty which could be found to have been breached by defendant. We disagree. The reference in question was in the context of his testimony that Mrs. Newmark had very fine hair. Thus the adjective "good" had reference to the effectiveness, so far as her hair was concerned, of a regular permanent wave as compared with the wave which was on sale, rather than to the safety of the solution or lotion used in administering the wave. We therefore find no case whatever for breach of express warranty.
Plaintiffs' motion for judgment in their favor as to liability was properly denied since there were issues of fact for determination by the jury. We find it unnecessary to pass upon the propriety of the court's denial of plaintiffs' motion for a new trial.
Reversed and remanded.