[Civ. No. 30322. First Dist., Div. Two. July 24, 1973.]

RONALD SHEPARD, a Minor, etc., Plaintiff and Appellant, v.
ALEXIAN BROTHERS HOSPITAL, INC., Defendant and Respondent.

---

## COUNSEL

Collins, Hays, Stewart, Berg, Pott & Sanford and David H. Doud for Plaintiff and Appellant.

Wines, Coffee & Robinson, Charles H. Kavalaris and Paul H. Coffee for Defendant and Respondent.

---

## OPINION

**KANE, J.**—Plaintiff Ronald Shepard appeals from a judgment of dismissal entered after respondent's demurrers to the complaint and amendment to complaint were sustained without leave to amend.

In his pleadings appellant alleges that he contracted serum hepatitis by reason of a blood transfusion administered to him while he was a patient in respondent hospital.

Asserting that the blood was contaminated with hepatitis virus, appellant sought recovery on alternative theories of strict liability in tort, breach of express and implied warranties, and negligence.[1]

### Strict Liability in Tort

In California a cause of action for strict liability in tort can be stated under two tests. The first test, laid down in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], holds that "[a] manufacturer is strictly liable in tort when *an article he places on the market,* knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (Italics added.) *The second test* is contained in Restate-

---

[1]Respondent answered the negligence count at the same time that it demurred to the other causes of action (seven in number). After the trial court sustained the demurrer, appellant dismissed the remaining negligence count without prejudice.

ment Second of Torts, section 402A, and provides that "(1) One who *sells any product* in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) *the seller is engaged in the business of selling such a product,* and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Italics added.)

As it appears, the two tests are not coextensive. While the Restatement rule requires a sale of the defective product by a seller who is engaged in the business of selling and covers only the user or consumer, the *Greenman* rule is much broader and imposes strict liability in tort whenever a defective article *placed* on the market causes injury to a human being. Nevertheless, there is a common denominator in both rules, namely, the requirement of a *defective product* which, when placed in the stream of commerce, causes injury.

Before examining whether, in light of the foregoing tests, appellant stated a cause of action under strict liability in tort, we ought to emphasize that, appellant's contention notwithstanding, the question to be decided here is not simply whether human blood is or can be designated as a product under a general definition (cf. Rest.2d Torts, § 402A, com. e; *Cunningham* v. *MacNeal Memorial Hospital* (1970) 47 Ill.2d 443 [266 N.E.2d 897, 45 A.L.R.3d 1353]). Rather, to the contrary, the precise issue is whether or not the *blood transfusion,* the alleged cause of appellant's injury, constitutes a cause of action under the doctrine of strict liability, either because it qualifies as a product and/or a sale.

In answering this question we need not speculate or make deductions from rules of general applicability. The California Legislature, by statutory enactment, has expressed its intent and declared a clear legal policy that the transfusion of blood and blood product into the human body shall be construed for *all purposes* to be the rendition of a service and not a sale. Thus, Health and Safety Code,[2] section 1606, provides that "[t]he procure-

---

[2]Unless otherwise indicated, all references will be made to the California Health and Safety Code.

ment, processing, *distribution, or use of whole blood, plasma,* blood products, and blood derivatives *for the purpose of* injecting or *transfusing the same,* or any of them, *into the human body shall be construed to be, and is declared to be, for all purposes whatsoever, the rendition of a service* by each and every person, firm, or corporation participating therein, *and shall not be construed to be, and is declared not to be, a sale* of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever." (Italics added.)

To underline the legislative intent that a blood transfusion must be considered to be a service even if a sale takes place, section 1600 makes it explicit that the statutory word "distribution" includes sale and exchange (§ 1600.4).

As appellant aptly notes, the rationale behind section 1606 is expressed in *Perlmutter* v. *Beth David Hospital* (1954) 308 N.Y. 100 [123 N.E.2d 792], which served as the inspiration for the California Legislature in enacting section 1623 (the predecessor of § 1606) in 1955. In *Perlmutter,* the New York court laboriously analyzed the nature of hospital treatment and concluded that the supplying of blood by a hospital to a patient is merely incidental to the services rendered, and cannot, therefore, be considered as a sale. Accordingly, the court held that where no negligence or fault is present, the hospital is not liable to a patient who becomes infected with serum hepatitis as a result of a blood transfusion.

 In sum, since section 1606 and its underlying rationale compel the conclusion that a blood transfusion must be regarded as a service, the doctrine of strict liability in tort is inapplicable as a matter of law.

Appellant, however, asks us to extend the doctrine to services. He bases his argument on the broad policy principles enunciated in some cases and voiced by some authorities, and on the salient fact that in a series of cases the doctrine has been extended to a number of nonsale transactions as well.

In justifying the imposition of strict liability the courts have frequently stressed that their purpose is to insure that the cost of injuries resulting from *defective products* are borne by the manufacturers who *put such products on the market* rather than by the injured persons who are powerless to protect themselves (*Greenman* v. *Yuba Power Products, Inc., supra,* at p. 63; *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722]). As additional reasons for imposing such liability, it has also been said that the defendant *profits* from such transactions and is in a good strategic position either to protect himself by making inquiry and proper tests, or *to promote safety* through pressure on his supplier, or by using another product which is not defective. As a general proposition,

it has been further suggested that the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business (*Price* v. *Shell Oil Co., supra,* at p. 251; *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 262-263 [37 Cal.Rptr. 896, 391 P.2d 168]; *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 18-19 [45 Cal.Rptr. 17, 403 P.2d 145]; *Escola* v. *Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 462 [150 P.2d 436]; *Newmark* v. *Gimbel's Incorporated* (1968) 102 N.J.Super. 279 [246 A.2d 11, 15-16]). It is quite apparent, however, that none of these reasons apply to a hospital which, during the care and treatment of a patient, administers a blood transfusion.

As indicated before, profound justification exists for the Legislature to determine that a blood transfusion, provided in the course of treatment, should be considered a service rather than a product or sale. It needs no extended discussion to perceive that a hospital is primarily devoted to the care and healing of the sick. The supplying of blood by the hospital is entirely subordinate to its paramount function of furnishing trained personnel and specialized facilities in an endeavor to restore the patient's health. Providing medicine or supplying blood is simply a chemical aid or instrument utilized to accomplish the objective of cure or treatment. The patient who enters a hospital goes there not to buy medicines or pills, not to purchase bandages, iodine, serum or blood, but to obtain a course of treatment (*Perlmutter* v. *Beth David Hospital, supra,* at pp. 795-796; *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1027 [98 Cal.Rptr. 187]). It is also obvious that in the normal commercial transaction contemplated in the strict liability cases the essence of the transaction relates *solely* to the article sold, the seller is in the business of supplying the product to the consumer and it is that, and that alone for which he is paid (*Magrine* v. *Spector* (1968) 100 N.J.Super. 223 [241 A.2d 637]). ▮ The foregoing marked distinctions compel the conclusion that *a hospital* is not engaged in the business of distributing blood to the public and *does not put the blood as a product on the market in order to profit therefrom.*

Additional policy considerations also militate against the imposition of strict liability in the situation here presented. Thus, it is widely recognized that despite every effort to screen donors, the possibility that hepatitis virus may be present in the dried plasma cannot be completely obviated. Moreover, if the virus is present, it cannot be discovered by microscopic examination or by any other test known to medical science (*McDaniel* v. *Baptist Memorial Hospital* (6th Cir. 1972) 469 F.2d 230, 234; *Merck & Co.* v. *Kidd* (6th Cir. 1957) 242 F.2d 592; see also: *A New Principle of Products Liability in Service Transactions* (1969) 30 U.Pitt.L.Rev. 508, 515). Since

in the present stage of medical science the hepatitis virus seems to be virtually undetectable,[3] the *imposition of strict liability* for transfusion of contaminated blood *would not achieve the policy goal of added incentive to safety.*

Appellant's additional argument that a sale is not, and should not be, a prerequisite to the applicability of strict liability in tort is a far cry from the proposition that it should be extended to services, too.

It is, of course, conceded that subsequent California cases have expanded the scope of the *Greenman* doctrine by imposing strict liability on retail dealers (*Vandermark* v. *Ford Motor Co., supra*); wholesale and retail distributors (*Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228 [71 Cal.Rptr. 306]); home builders (*Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749]); bailors and lessors of personal property (*McClaflin* v. *Bayshore Equipment Rental Co.* (1969) 274 Cal. App.2d 446 [79 Cal.Rptr. 337]; *Price* v. *Shell Oil Co., supra*); and licensors of chattels (*Garcia* v. *Halsett* (1970) 3 Cal.App.3d 319 [82 Cal.Rptr. 420]). The standard of strict liability has been held to apply to a defect in design as well as a defect in manufacture (*Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229]) and extends not only to actual consumers or users, but to any human being to whom an injury from the defect is reasonably foreseeable (*Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578 [75 Cal.Rptr. 652, 451 P.2d 84]; *Johnson* v. *Standard Brands Paint Co.* (1969) 274 Cal.App.2d 331 [79 Cal.Rptr. 194]).

However, it bears special emphasis that a significant element running through all these cases is that *"each of the defendants against whom the standard of strict liability has been applied played an integral and vital part in the overall production or marketing enterprise."* (*Silverhart* v. *Mount Zion Hospital, supra,* p. 1026; italics added.) This, of course, cannot be said about respondent which was in neither the production nor marketing business of blood. Moreover, it must also be added that *there is a strong public policy in favor of promoting an adequate supply of blood.* Notwithstanding the danger from latent hepatitis virus, blood transfusions result in a significant net gain in lives (*A New Principle of Products Liability in Service Transactions,* 30 U.Pitt.L.Rev. 508, *supra*).

---

[3]It has been suggested by appellant that greater care in the selection of donors could reduce the likelihood of the presence of hepatitis virus in the blood obtained for use in hospitals, and also that recently ways have been found where the presence of hepatitis can be discovered by application of certain tests (see (1972) 45 A.L.R.3d 1364, 1373, fn. 2). If so, failure to use known methods of discovery might be charged to the hospital as negligence.

We observe in passing that the cases cited by appellant are all distinguishable from the case at bench and do not call for a different result. Thus, both *Cunningham* v. *MacNeal Memorial Hospital, supra,* and *Jackson* v. *Muhlenberg Hospital* (1969) 53 N.J. 138 [249 A.2d 65], relied upon the fact that in Illinois and New Jersey the supplying of blood constituted a sale. In *Hoffman* v. *Misericordia Hospital of Philadelphia* (1970) 439 Pa. 501 [267 A.2d 867], the court did not decide the question of whether the furnishing of blood constituted a sale or a service. Moreover, it is of overriding consequence that all three cases were decided in the absence of a statute such as section 1606 in California. The fourth case, *Newmark* v. *Gimbel's Incorporated, supra,* while applying the theory of implied warranty of fitness to the service of a hairdresser, emphasized that the question of blood transfusion may be distinguished on the basis that there is no way in which the blood could be tested to ascertain that all of the hepatitis strain had been removed (246 A.2d at p. 16).

Finally, it is worthy of note that shortly after the Illinois Supreme Court held in *Cunningham* v. *MacNeal Memorial Hospital, supra,* that a blood transfusion was a sale subjecting the hospital to liability without fault, the Illinois State Legislature adopted a statute exempting hospitals from liability without proving negligence or willful misconduct. In its declaration of policy, the Illinois Legislature said: "The availabilty of scentific knowledge, skills and materials for the purpose of injecting, transfusing or transplanting human whole blood, plasma, blood products, blood derivatives and products, corneas, bones, or organs or other human tissue[4] is important to the health and welfare of the people of this State. *The imposition of liability without fault* upon the persons and organizations engaged in such scientific procedures *inhibits the exercise of sound medical judgment* and restricts the availability of important scientific knowledge, skills and materials. It is therefore the public policy of this State to promote the health and welfare of the people by *limiting the legal liability* arising out of such scientific procedures *to instances of negligence or willful misconduct.*" (Ill. Stats., tit. 91, § 181; italics added. See to the same effect: Revised Stat. of Neb., § 71-4809.)

■ Upon the foregoing reasons we are constrained to adhere to the

---

[4]In accord with the policy expressed in this declaration and in harmony with the provisions of section 1606, the California Legislature added section 7155.6 to the code providing that "[t]he use of any human tissue donated pursuant to this chapter ["Uniform Anatomical Gift Act"] for the purpose of transplantation in the human body shall be construed for all purposes as a rendition of a service by each person participating therein and shall not be construed as a sale of such tissue." (Added by Stats. 1970, ch. 1006, § 3.)

time-honored, well-established law which states that those who sell their services for the guidance of others in their economic, financial and personal affairs are burdened only with a duty of reasonable performance under the circumstances and cannot be made liable in the absence of negligence or intentional misconduct (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487 [275 P.2d 15]; *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958, 978 [95 Cal. Rptr. 381]). ■ Accordingly, we hold that the doctrine of strict liability in tort does not extend to the service of blood transfusions.

### *Warranties*

■ Appellant does not dispute that under existing law sale is an essential element to impose liability under warranties (Cal. U. Com. Code, §§ 2313-2316; *Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 440 [79 Cal.Rptr. 369]; *Gottsdanker* v. *Cutter Laboratories* (1960) 182 Cal.App.2d 602, 609 [6 Cal.Rptr. 320, 79 A.L.R.2d 290]; 1 Witkin, Summary of Cal. Law (1960) Sales, § 10, p. 500). He suggests, however, that the warranties should be extended to the service of transfusing blood. In support of his proposal, appellant cites California Uniform Commercial Code, section 2313, comment 2,[5] and borrows language from *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 582 [12 Cal.Rptr. 257, 360 P.2d 897], where the court expressed the view that although the provisions of the Uniform Sales Act (Civ. Code, §§ 1732-1736 (now Cal. U. Com. Code, §§ 2313-2315)) apply only to sales, similar warranties may be implied in other contracts not governed by such statutory provisions *"when the contracts are of such a nature that the implication is justified."* (Italics added.)

Needless to say, the quoted portion of this latter case brings us back to the same policy considerations which we discussed earlier in deciding whether or not strict liability in tort should attach. It also ought to be emphasized that in cases involving personal injuries resulting from defective products, the theory of strict liability in tort has virtually superseded the concept of implied warranties (*Grinnell* v. *Charles Pfizer & Co., supra,* at p. 432; 13 A.L.R.3d p. 1049). ■ As the court noted in *Greeno* v. *Clark Equipment Company* (N.D.Ind. 1965) 273 F.Supp. 427, 429, the doctrine of strict liability is hardly more than what exists under implied

---

[5]Comment 2 on California Uniform Commercial Code, section 2313, sets forth in part that although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to direct parties to such a contract.

warranty when stripped of the contract doctrines of privity, disclaimer, requirements of notice of defect, and limitations through inconsistencies with express warranties. (See also: *Grinnell* v. *Charles Pfizer & Co., supra,* at p. 433, fn. 3.) The *Greenman* court took even a wider view, stating that the liability is not governed by the law of contract warranties but by the law of strict liability in tort (*Greenman* v. *Yuba Power Products, Inc., supra,* at p. 63).

Since, under the foregoing authorities, the liability imposed by strict liability in tort and breach of express and implied warranties is virtually the same, i.e., a form of liability without fault, the conclusion reached in the earlier discussion is equally applicable here.

In addition, the cause of action for alleged breach of express warranty in the case at bench asserts nothing more than the elements of implied warranties. Thus, all that appellant alleges is that: "At said time and place of said sale, and in order to induce plaintiff to purchase said goods, defendants warranted and represented that said blood was of merchantable quality and fit for the purpose intended. Said representations and warranties were a part of the basis of the bargain and sale made between plaintiff and defendants as aforesaid and, in reliance thereon, plaintiff was induced to, and did, purchase said goods as herein above alleged."

█ Accordingly, we hold that since the furnishing of a blood transfusion is, by law, a service and not a sale (§ 1606), respondent cannot be held liable under a breach of warranty theory.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.