[Civ. No. 15546. Third Dist. Oct. 18, 1976.]

CHARLES I. McDONALD, Plaintiff and Appellant, v.
SACRAMENTO MEDICAL FOUNDATION BLOOD BANK et al.,
Defendants and Respondents.

## Counsel

Leverenz & Ward and Carl B. Leverenz for Plaintiff and Appellant.

Wilke, Fleury, Hoffelt & Gray, Joe S. Gray, Scott L. Gassaway, Hassard, Bonnington, Rogers & Huber, David E. Willett, James N. Penrod, Charles F. Bond II, Tweedy, Dawson, Duncan, Hunt & Ball, Tweedy, Duncan, Hunt & Ball and Nina Loree Hunt for Defendants and Respondents.

## Opinion

**PARAS, J.**—A 45-year-old woman underwent a routine hysterectomy at Feather River Hospital in Chico on September 28, 1970. The operation itself was successful, but she died three months later of serum hepatitis contracted from a blood transfusion administered during the surgical procedure. Her husband filed this wrongful death action against the doctors, the hospital, and the supplier of the blood, a nonprofit community blood bank. He alleged causes of action in strict liability, breach of warranty, and negligence.

The trial court sustained defendants' demurrers to the strict liability and breach of warranty causes of action; and on May 3, 1973, this court denied plaintiff's petition for a writ of mandate (3 Civ. 14005). The case

proceeded to a jury trial on May 19, 1975, on the negligence theory, with a resulting defense verdict. Plaintiff appeals from the ensuing judgment, limiting the issues on appeal to the rulings on strict liability and breach of warranty.

I

Plaintiff is confronted by dispositive statutory and case law. Health and Safety Code section 1606 (enacted in 1955 as § 1623) states that: "The procurement, processing, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human body shall be construed to be, and is declared to be, for all purposes whatsoever, the rendition of a service by each and every person, firm, or corporation participating therein, and shall not be construed to be, and is declared not to be, a sale of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever."

` The leading case dealing with strict liability for blood transfusion hepatitis is *Perlmutter* v. *Beth David Hospital* (1954) 308 N.Y. 100 [123 N.E.2d 792]. The New York court held that there was no strict liability because the contractual relationship between a hospital and a patient was one for the rendition of services; the furnishing of blood, even though a charge was made for it, was held not to be a "sale."

Section 1606 was a direct result of the *Perlmutter* decision and was intended to codify its rule for this state. Forty-two other states have now followed California's lead in adopting the *Perlmutter* rule by statute. (See Comment, 24 Am.U.L.Rev. 367, 403-405.) The statutes have been uniformly interpreted to prevent the imposition of strict liability, most recently in *St. Luke's Hospital* v. *Schmaltz* (1975) 188 Colo. 353 [534 P.2d 781]; *Williamson* v. *Memorial Hospital of Bay County* (Fla. 1975) 307 So.2d 199; *McKinstrie* v. *Henry Ford Hospital* (1974) 55 Mich.App. 659 [223 N.W.2d 114]; and *Shepard* v. *Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606 [109 Cal.Rptr. 132].[1]

■ Despite this impressive array of authority, plaintiff argues that we are not bound by the declaration in Health and Safety Code section 1606 that a blood transfusion is not a sale. It is all too clear, however, that the Legislature intended to adopt the *Perlmutter* rule in California and to

---

[1]For a discussion of the case law up to 1972, see 45 A.L.R.3d 1353, 1389 (1972).

foreclose this very argument. We shall not tamper with such a clearly stated legislative policy.

## II

Plaintiff argues that section 1606 merely classifies blood and blood products as a service without affecting the question of strict liability; we are therefore free, he maintains, to impose strict liability on the *service* of supplying blood.

Commentators have noted this potential "loophole" in the statute (see e.g., Franklin, *Tort Liability for Hepatitis: An Analysis and a Proposal* (1972) 24 Stan.L.Rev. 439, 476; 2 Frumer & Friedman, Products Liability (1975) § 16.04 [3] [b].) The *Shepard* court itself appears to have treated the question as an open one. (See 33 Cal.App.3d at p. 610 et seq.)

A recent law review article supports the argument, using the following words: "There are several reasons that suggest the legislature did not intend that the statute completely prohibit California courts from applying strict liability. First, the express language of the statute is clear and only requires that blood transfusions be deemed services. Secondly, the legislature has refused to pass a statute that would expressly [and literally] prohibit the application of strict liability or warranty to blood services. CAL. A.B. 2889 (April 16, 1971) provided that 'No person shall be entitled to civil damages or injuries sustained as the result of contracting hepatitis by reason of a blood transfusion either in strict liability or warranty.' Finally, the legislature knew when it passed the statute that it would not guarantee immunity from liability without fault, because the California Supreme Court had already applied the strict liability of warranty to services. Aced v. Hobbs-Sesack Plumbing Co., 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897 (1961). Had the legislature intended to grant complete immunity, the *Aced* decision would have required it to so state in the statute. Rather, it appears that the legislature wished to allow the courts to apply liability without fault to blood services if they so wished." (Comment, *Strict Liability—The Medical Service Immunity and Blood Transfusions in California* (1974) 7 U.C.Davis L.Rev. 196, 202, fn. 31. See also fn. 53 of the same article for additional authority.)

We are not persuaded. The Legislature's intent in failing to pass the proposed bill is at best equivocal. Moreover, the *Aced* case was decided

*after* section 1606 was enacted in 1955; although the latter was recodified in 1963, there is no indication that the Legislature reconsidered its substance at that time. Furthermore, the *Aced* holding that implied warranties apply to contracts for labor and materials (55 Cal.2d at p. 582), has not been followed since the case was decided, the later cases relying upon the statement in *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487 [275 P.2d 15], "that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct." (See *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958, 978 [95 Cal.Rptr. 381]; *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1028 [98 Cal.Rptr. 187, 54 A.L.R.3d 250]. See also *Slayton* v. *Wright* (1969) 271 Cal.App.2d 219, 237 [76 Cal.Rptr. 494].)

Although these cases have been criticized (see *Products and the Professional: Strict Liability in the Sale-Service Hybrid Transaction* 24 Hastings L.J. 111; *Silverhart* v. *Mount Zion Hospital, A Re-examination of the Hospital-Patient Relationship* 5 Sw.U.L.Rev. 297), all of the critics seem to agree with the proposition that strict liability should *not* be applied to true services; their objection is to an arguable mischaracterization of facts indicating a sale as a service. The question once again is whether we may characterize the transaction before us as a sale. The answer again is no, because section 1606 has foreclosed such a characterization. As stated earlier, we do not second-guess clearly expressed legislative enactments.

### III

█ Plaintiff's final argument asserts that as above interpreted, section 1606 constitutes a denial of equal protection of the law because the classification of blood differently from other products is not rational. In support of this argument, plaintiff cites *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], which held California's "guest statute" unconstitutional. █ In doing so, the *Brown* court restated the general rule that a classification " ' "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229-230, 92 S.Ct. 251].)" (Italics in original.) (8 Cal.3d at p. 861.)

Generally, the courts have upheld legislative classifications, presuming their constitutionality, and requiring only that the discrimination bear some rational relationship to a conceivable public purpose. (*Dandridge* v. *Williams* (1970) 397 U.S. 471 [25 L.Ed.2d 491, 90 S.Ct. 1153] reh. den., 398 U.S. 914 [26 L.Ed.2d 80, 90 S.Ct. 1684]; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10].) Statutes limiting recoveries have generally been upheld in such fields as workmen's compensation (*Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686 [151 P. 398]); the limitation of shipowner's liability, (see 46 U.S.C. § 183; *Old Dominion Steamship Co.* v. *Gilmore* (1907) 207 U.S. 398 [52 L.Ed. 264, 28 S.Ct. 133]); wrongful death statutes (*Carroll* v. *Missouri Pacific Railway Co.* (1885) 88 Mo. 239; *Stucki* v. *Loveland* (1972) 94 Idaho 621 [495 P.2d 571]); and the limitation of liability of newspaper and radio stations in libel actions (*Werner* v. *Southern Cal. etc., Newspapers* (1950) 35 Cal.2d 121 [216 P.2d 825, 13 A.L.R.2d 252]).

Defendant cites three cases as having ruled upon the constitutional issue and upheld the legislation, *Heirs of Fruge* v. *Blood Services* (5th Cir. 1975) 506 F.2d 841, 843; *McDaniel* v. *Baptist Memorial Hospital* (6th Cir. 1972) 469 F.2d 230, 231; and *McKinstrie* v. *Henry Ford Hospital* (1974) 55 Mich.App. 659 [223 N.W.2d 114]. Of the three, only *McDaniel* actually dealt with the equal protection argument, the other two involving due process and immunity under the Louisiana Constitution (*Fruge*) and vagueness and unlawful delegation of legislative power (*McKinstrie*). In the two California cases which cite section 1606 (*Shepard* v. *Alexian Brothers Hosp., supra,* and *Gottsdanker* v. *Cutter Laboratories* (1960) 182 Cal.App.2d 602 [6 Cal.Rptr. 320, 79 A.L.R.2d 290]), constitutional questions were not discussed.

■ Section 1606 will survive an equal protection challenge if the Legislature had some rational basis for distinguishing those who suffer injuries from blood transfusions from those injured by other tortious conduct for which strict liability is imposed. (E.g., *Gottsdanker* v. *Cutter Laboratories, supra,* (polio vaccine).) ■ The object and purpose of section 1606 is to shield blood donors and suppliers from *strict liability* for injury arising out of the therapeutic injection of blood into a human being, thereby encouraging and promoting the constant availability of an adequate blood supply. Liability for *negligence* in connection with the same injury is not foreclosed.[2] ■ Is there a reasonable basis for this

[2]The Legislature has dealt with problems in the negligence area by the enactment in 1974 (effective Jan. 1, 1975) of Health and Safety Code section 1600.1 et seq., requiring testing of all blood for hepatitis, and extensive record keeping regarding donors and

legislative insistence that the liability of blood suppliers be thus measured by negligence concepts alone?

We conclude that there is and that section 1606 is constitutional. Blood injections are absolutely vital to the medical profession's constant struggle against illness, injury and disease. "The development of the modern blood transfusion in the past half century is recognized by the medical profession as one of its finest achievements. Without today's blood transfusion, many of the modern surgical practices would not be possible, and hemorrhage would be a far greater cause of death."[3] A ready availability of blood for such use is equally vital. Against this consideration, the Legislature has weighed the relatively minor[4] risk of hepatitis which the blood recipient must take, and has determined that in the absence of negligence, such risk must be accepted. Such a legislative determination is not unreasonable.

When section 1606 was enacted in 1955, there was no scientific method available for testing blood for hepatitis. The first, relatively insensitive tests became available in late 1970, and although medical research continues, the best test now available is still claimed to be at most 65 percent effective.[5] Thus in contrast to other cases in which strict liability has been imposed (e.g., *Gottsdanker, supra*), there is no way that the risk of hepatitis can be eliminated from transfused blood.[6] As stated in *Shepard,* "*The imposition of strict liability* for transfusion of contaminated blood *would not achieve the policy goal of added incentive to safety.*" (Italics in original.) (33 Cal.App.3d at pp. 611-612; see also Rest.2d Torts,

donees, and by Health and Safety Code sections 1625 and 1626 (effective Jan. 1, 1977), closely restricting the use of commercial paid donors. These issues have been the subject of intense public criticism. See e.g., Titmuss, The Gift Relationship (New York: Random House, Vintage Books 1971); Comptroller General Report to the Congress, Hepatitis from Blood Transfusion: Evaluation of Methods to Reduce the Problem (Feb. 13, 1976.)

[3] *Liability for Blood Transfusion Injuries*, (1958) 42 Minn.L.Rev. 640 (fn. omitted).

[4] An overall average of 2.8 percent in 14 metropolitan areas of the United States. See Comptroller General's Report to the Congress, Hepatitis from Blood Transfusion: Evaluation of Methods to Reduce the Problem (Feb. 13, 1976) page 7.

[5] Comments, *Blood Transfusions and the Transmission of Serum Hepatitis: The Need for Statutory Reform*, (1975) 24 Am.U. L.Rev. 367, 378. See also Van Wormer, *Transfusion Associated Hepatitis* (1976) 12 Cal.Western L.Rev. 389, 399-400; Franklin, *Tort Liability for Hepatitis* (1972) 24 Stan.L.Rev. 439, 445; *Shepard* v. *Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606, 611-612 [109 Cal.Rptr. 132].

[6] There is some preliminary evidence that the processes involved in freezing blood may eliminate hepatitis (see Comptroller General's Rep., *supra,* at pp. 49-52), but these results are still tentative.

§ 402A, com. k; Epstein, *Medical Malpractice: The Case for Contract,* 1976 Am.Bar Found. Research J. 87, 118.)

■ Strict liability has been generally justified on four main policy grounds: (1) as a short cut to liability where negligence is present but difficult to prove, (2) as an economic incentive to improved product safety, (3) to induce the reallocation of resources toward safer products, and (4) to spread the risk of loss among all who use the product. See Franklin, *Tort Liability for Hepatitis: An Analysis and a Proposal,* 24 Stan.L.Rev. 439, *supra.*

■ In this case, strict liability cannot be justified as a short cut for negligence. Nor, as we have seen, can strict liability be justified on the ground that it will result in safer blood. The resource reallocation rationale is also inapplicable, because there is no substitute for blood. Only the fourth ground supports the plaintiff's contention (as it does every argument favoring recovery in every case, almost without exception), but it cannot overcome the others.

The fact that the majority of the policy objectives behind strict liability do not apply to transfusion hepatitis cases is a further rational basis for the legislative distinction. Section 1606 is not a denial of equal protection, and is constitutional.

The judgment is affirmed.

Regan, Acting P. J., and Evans, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1976.