174 So.2d 736 (1965)
John McLEOD, Petitioner,
v.
W.S. MERRELL COMPANY, DIVISION OF RICHARDSON-MERRELL, INC., International Pharmacies, Inc., and James Drug Shop, Inc., Jointly and severally, Respondents.
No. 33909.
Supreme Court of Florida.
May 5, 1965.
*737 Nichols, Gaither, Beckham, Colson & Spence, Alan R. Schwartz and Robert Orseck, Miami, for petitioner.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for W.S. Merrell Co., Div. of Richardson-Merrell, Inc., Sherouse & Corlett and Richard M. Gale, Miami, for International Pharmacies, Inc., Blackwell, Walker & Gray, Miami, for James Drug Shop, Inc., respondents.
THORNAL, Justice.
By petition for a writ of certiorari we are requested to review a decision of the Court of Appeal, Third District, which passes upon a question certified by that court as being one of great public interest.
We must decide whether a retail druggist who properly fills a prescription of a medical doctor with an unadulterated drug is liable to the patient-purchaser for breach of an implied warranty of fitness or merchantability if the drug produces harmful effects on such purchaser.
Petitioner McLeod's physician prescribed for his use a drug known as "Mer/29". It had been advertised as a commodity for controlling body cholesterol. The drug was manufactured by W.S. Merrell Co. It was sold by the manufacturer to the respondents International Pharmacies, Inc. and James Drug Shop, Inc., for resale to the public only on prescriptions of medical doctors. The respondents International and James filled the prescriptions presented to them by petitioner McLeod. The prescriptions were filled strictly in accordance with instructions of the doctor.
It was stipulated that Merrell had prepared the drug and that the retail druggist respondents had received it in the original sealed packets; that the drug was sold at retail to McLeod in the original unbroken *738 containers without analysis by the druggists; that the use of the drug had been prescribed for the petitioner McLeod by his personal physician.
By a three-count complaint, McLeod, as plaintiff in the trial court, sued Merrell, the manufacturer, and the two respondent retail druggists. The retailers were named only in the third count. It was alleged that although intended as a remedial control of cholesterol, the drug "Mer/29" actually exposed the user to a grave risk of harm when used in ordinary dosages, by causing severe side effects, such as the formation of cataracts and other eye damage. There was no warning by any of the respondents suggesting a possible inherent danger in the use of the drug.
The third count of the complaint charged the three defendants, the manufacturer and the two retailers, with breaches of implied warranties, of (1) reasonable fitness for the intended purpose; (2) merchantability; and (3) wholesomeness or reasonable fitness for human consumption. The third count was dismissed as to the respondent retail drug stores. The trial judge had the view that a retail druggist does not warrant the inherent fitness of drugs he sells on prescription. On appeal, the Court of Appeal, Third District, affirmed the action of the circuit judge. McLeod v. W.S. Merrell Co. et al, 167 So.2d 901. The decision comes to us with the certificate of the Court of Appeal to the effect that it passes upon a question of great public interest "because it affects the law of warranty relating to drugs sold by a druggist pursuant to a doctor's prescription." The respondents are the two retail druggists. The manufacturer Merrell is not a party here.
Since the petition for certiorari is buttressed by the certificate of the Court of Appeal, we proceed directly to the merits without a preliminary consideration of jurisdictional problems.
Certain aspects of the implied warranty problem may be laid aside at the outset. The instant suit does not involve: (1) an action against a manufacturer; (2) adulteration of a commodity by spoilation or the presence of a foreign substance; (3) a product for human consumption available indiscriminately to the public generally; and, (4) a purchase for a particular purpose with reliance upon the druggist to supply a commodity fit for such purpose.
It may be well to note also that we are not here dealing with a complaint grounded in negligence.
By contrast to the foregoing, we should examine the instant record within a narrow orbit circumscribed by the salient facts, which are: (1) an action against a retail druggist; (2) the drug was available only to a limited segment of the public who could present a medical doctor's prescription therefor; (3) the prescription was filled precisely in accordance with its directions, and even then, in the manufacturer's original packet; (4) there was no adulteration; (5) both the patient-purchaser and the retail druggist relied upon the doctor's prescription, rather than upon the druggist's judgment.
An implied warranty of fitness for a particular purpose is conditioned upon the buyer's reliance on the skill and judgment of the seller to supply a commodity suitable for the intended purpose. Smith v. Burdines, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115. The warranty of merchantability applies when goods are offered for consumption by the public generally. Therefore, in order to be merchantable the goods must be fit for ordinary uses for which such goods are sold. Sencer v. Carl's Markets Inc., Fla., 45 So.2d 671; Food Fair Stores of Florida v. Macurda, Fla., 93 So.2d 860.
In the instant case the commodity, "Mer/29", was not available to the general public in the sense that it could be purchased by any customer who entered the store and paid the price. Actually, it was available only to a very limited segment of the public *739 who had previously been seen by their personal physicians and who presented their doctor's prescription directing that the drug be supplied. Obviously, the patient-purchaser did not rely upon the judgment of the retail druggist in assuming that the drug would be fit for its intended purpose. This confidence had been placed in the physician who prescribed the remedy. Supposedly, he in turn had placed his reliance on the representations of the manufacturer.
The petitioner insists that his position is sustained by our opinion in Green v. The American Tobacco Co., Fla., 154 So.2d 169. There are several distinguishing elements. Green was a suit against a manufacturer. It involved a commodity which was available indiscriminately to the public generally. Green can be summarized as a case which applied a rule of absolute or strict liability to the manufacturer of a commodity who had placed it in the channels of trade for consumption by the public generally. The case before us is lacking in many of these significant elements.
In effect, the petitioner McLeod is asking us to impose upon these retail prescription druggists an absolute, strict liability without fault in an action in tort. While the claim of the petitioner is presented in the posture of an alleged breach of implied warranties, actually, the real theory upon which we are invited to rely is the rapidly evolving concept of strict liability without fault. Section 402A, Restatement of Law, Second, Torts; Prosser, Law of Torts, 3rd ed., Sec. 97, p. 672. The obvious effect of the application of this concept, were we to accept it, would be to convert the retail prescription druggists into insurers of the safety of the manufactured drug. We are asked to do this despite the absence of any basis for implying a warranty. The transaction here is not one out of which a warranty, even under most modern standards, would be implied. Whiteley v. Webb's City, Fla., 55 So.2d 730.
Retail druggists in situations typified by the instant record are even excepted from the American Law Institute's strict liability rule which we have mentioned. See comment (k) following the Restatement, Section 402A, supra. The cited comment notes as an exception from the strict liability concept various new or experimental drugs which, because of lack of time and opportunity for sufficient medical experience, cannot be considered as being absolutely safe for human consumption, although available experience justifies the marketing and use of the drug notwithstanding a medically recognizable risk.
The concept of strict liability without fault should not be applied to the prescription druggists in the instant situation. Rather, it appears to us, that the rights of the consumer can be preserved, and the responsibilities of the retail prescription druggist can be imposed, under the concept that a druggist who sells a prescription warrants that (1) he will compound the drug prescribed; (2) he has used due and proper care in filling the prescription (failure of which might also give rise to an action in negligence); (3) the proper methods were used in the compounding process; (4) the drug has not been infected with some adulterating foreign substance. Watkins v. Jacobs Pharmacy Company, 48 Ga. App. 38, 171 S.E. 830; Gottsdanker v. Cutter Laboratories, 182 Cal. App.2d 602, 6 Cal. Rptr. 320, 79 A.L.R.2d 290. It is unnecessary to reach respondent's claim that the retail druggists, in filling a prescription, are rendering a "service" instead of supplying a commodity.
When measured by the foregoing standards, we find no breach of implied warranty in the case at bar. The Court of Appeal, therefore, correctly affirmed the order of dismissal entered by the trial judge.
The writ is discharged.
It is so ordered.
THOMAS, Acting C.J., and O'CONNELL, CALDWELL and ERVIN, JJ., concur.