903 So.2d 275 (2005)
Robert POWERS, as Personal Representative of the Estate of Gail Powers, Appellant,
v.
Shirin H. THOBHANI, M.D., Your Druggist, Inc., and B.A.L. Pharmacy, Inc., d/b/a The Medicine Shoppe, Appellees.
No. 4D04-2061.
District Court of Appeal of Florida, Fourth District.
June 1, 2005.
*276 Stephanie Alexander of Tripp Scott, P.A., Fort Lauderdale, for appellant.
Scott A. Cole of Cole, Scott & Kissane, P.A., Miami, and Mark L. Pomeranz of Pomeranz & Sandsman, North Miami, for appellee Your Druggist, Inc.
Jay B. Green and Jonathan M. Matzner of Green, Ackerman & Frost P.A., Boca Raton, for appellee B.A.L. Pharmacy d/b/a The Medicine Shoppe.
POLEN, J.
This appeal arises from a final judgment dismissing with prejudice the negligence claims in Robert Powers' amended complaint, as personal representative of the estate of his deceased wife, Gail Powers, against appellees pharmacies Your Druggist and B.A.L. Pharmacy d/b/a The Medicine Shoppe. We reverse, holding that the complaint states a cause of action for negligence on the part of the pharmacies.
On April 5, 2002, Gail Powers began receiving treatment from her primary neurologist, Dr. Thobhani, for ongoing neck and back pain. Thobhani treated Gail on at least 25 occasions during the six-month treatment period. Over the six months, Thobhani prescribed a minimum of six varieties of drugs and narcotics, including OxyContin/OxyCodone,[1] Percocet,[2] Soma, Xanax, and Diazepam.[3][4] During the six-month period, Thobhani allegedly repeatedly prescribed these narcotics and other medications days before Gail should have depleted the preceding prescription. Thobhani also allegedly prescribed two or *277 more narcotics at a time along with other contraindicated drugs.
Powers alleged that Your Druggist and The Medicine Shoppe filled every prescription written by Thobhani, without question.[5] The pharmacies also allegedly filled numerous prescriptions for these narcotics too closely in time, within days of having filled previous prescriptions. Powers alleges that this prescription filling pattern continued until the day of Gail's death.
Gail Powers, age forty-six, collapsed, unconscious, in her home on October 21, 2002 and died the next day at the hospital, having never regained consciousness. An autopsy indicated that the cause of death was "Combined drug overdose (OxyCodone and diazepam)." Lab results were positive for Atropine, Diazepam, Nordiazepam, OxyCodone, Benzodiazepines and Opiates, all prescribed by Thobhani and all allegedly filled by Your Druggist and The Medicine Shoppe.
Powers brought negligence claims against Your Druggist and The Medicine Shoppe, alleging that the pharmacies owed Gail a duty to provide for the health, safety and welfare of its customers who had their prescriptions filled there commensurate with the prevailing professional standard of care. Powers does not allege that either pharmacy was not a properly licensed pharmacy; failed to compound the drugs prescribed; failed to use proper methods in filling the prescriptions; or failed to ensure that the drugs were unadulterated.
Both pharmacies filed motions to dismiss Powers' negligence claims against them, arguing that Florida does not allow a negligence claim against a pharmacy for properly filling a lawful prescription.[6] The trial court granted the motions to dismiss with prejudice, holding:
The law in Florida is well settled that a pharmacist has no duty to warn the customer's treating physician of the customer's dependency and addiction to a prescription drug. Pysz v. Henry's Drug Store, 457 So.2d 561, 562 (Fla. 4th DCA 1984). The basis of the negligence claims against these Defendants is that they knew or should have known that Gail Powers' prescriptions gave her access to too many pills within too short a period of time. Plaintiff's allegations are strikingly similar to the facts in Pysz, supra. Plaintiff seeks to impose a duty of care upon these Defendants which does not exist under the law. Accordingly, Counts II and III of the Amended Complaint fail to state legally cognizable claims.
Subsequently, the trial court entered a Final Judgment of Dismissal, which is the subject of the instant appeal. The standard of review of dismissals for failure to state a cause of action is de novo. Royal & Sunalliance v. Lauderdale Marine Ctr., 877 So.2d 843, 845 (Fla. 4th DCA 2004). "A motion to dismiss tests whether the plaintiff has stated a cause of action. In reviewing a motion to dismiss, a trial court is limited to the four corners of the complaint, and it must accept all the allegations in the complaint as true." Id. (citations omitted). The question of whether a duty exists is a question of law for the court to decide. Sanderson v. Eckerd Corp., 780 So.2d 930, 933 (Fla. 5th DCA 2001).
*278 We hold that the trial court erred in dismissing the negligence claims against the pharmacies on a motion to dismiss. While we cannot say whether Powers' claims will necessarily survive a summary judgment motion or prevail at trial, we are unwilling to hold that under no set of alleged or discoverable facts could Powers sustain negligence claims against the pharmacies' motions to dismiss under Florida law.
In McLeod v. W.S. Merrell Co., Division of Richardson-Merrell, Inc., 174 So.2d 736, 737 (Fla.1965), a products liability case, the Florida Supreme Court addressed a question certified as of great importance: "whether a retail druggist who properly fills a prescription of a medical doctor with an unadulterated drug is liable to the patient-purchaser for breach of an implied warranty of fitness or merchantability if the drug produces harmful effects on such purchaser." In answering this question, the court held that
the rights of the consumer can be preserved, and the responsibilities of the retail prescription druggist can be imposed, under the concept that a druggist who sells a prescription warrants that (1) he will compound the drug prescribed; (2) he has used due and proper care in filling the prescription (failure of which might also give rise to an action in negligence); (3) the proper methods were used in the compounding process; (4) the drug has not been infected with some adulterating foreign substance.
Id. at 739 (emphasis added). The court noted that it was not dealing with a complaint grounded in negligence. Id. at 738. Moreover, it specifically held that a cause of action for negligence might arise when a pharmacist does not use due proper care in filling the prescription, although the court did not clarify what factual circumstances the pharmacist's duty encompasses.
Florida appellate courts have recently begun to affirm negligence actions against pharmacists. Dee v. Wal-Mart Stores, Inc., 878 So.2d 426 (Fla. 1st DCA 2004). In Dee, the complaint alleged that the decedent received a prescription from her physician for a patch containing the opioid analgesic fentanyl, following a Cesarean section. Id. at 427. The prescription did not indicate a time limit for its use. More than four months later, the decedent filled the prescription at Wal-Mart's pharmacy and used it to treat a fractured ankle, which caused her to die from toxic overexposure. The plaintiff alleged that the prescription for the patch was unreasonable on its face by failing to include a time limit for filling or using the prescription, because it will likely cause death if used by someone not on a fentanyl regimen. Id. It was also alleged that a pharmacist viewing the four-month-old prescription would reasonably conclude that the patient is opioidnaive. Id. at 427-28. The first district reversed the trial court's dismissal of the negligence complaint against the pharmacy, reasoning that a pharmacy may be held liable for a breach of the duty to use due care in filling a prescription "[w]hen a pharmacy fills a prescription which is unreasonable on its face, even though it is lawful as written." Id. at 427. Dee resembles the case at bar because in both cases the prescriptions involved narcotics which could easily lead to overdose and both prescriptions eventually led to the user's death. Thus, McLeod and Dee confirm that factual circumstances exist under which negligence liability can be imposed on a pharmacy for failing to use due and proper care in filling prescriptions, even if the prescription is filled in accordance with the physician's instruction.
*279 There is a strong policy basis to support a pharmacy's duty to warn customers of the risks inherent in filling certain repeated prescriptions. Although the Florida pharmaceutical regulatory statutes and administrative codes do not create a private cause of action against pharmacists, see Johnson v. Walgreen Co., 675 So.2d 1036, 1038 (Fla. 1st DCA 1996), they do describe the duties of Florida pharmacists. According to § 465.003(6), Fla. Stat.:
As an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription order for potential adverse reactions, interactions, and dosage regimen she or he deems appropriate in the exercise of her or his professional judgment, and the pharmacist shall certify that the medicinal drug called for by the prescription is ready for transfer. The pharmacist shall also provide counseling on proper drug usage, either orally or in writing, if in the exercise of her or his professional judgment counseling is necessary.
See also Fla. Admin. Code R. 64B16-27.300, 64B16-27.820. Accordingly, Florida pharmacists are already specifically charged with general knowledge of prescription medication and the risks presented by taking particular prescription drugs, such that they should be able to evaluate and explain the operative risks of taking a medication or series of medications. Thus a strong policy basis already exists supporting a pharmacist's duty to warn customers of the risks inherent in filling repeated and unreasonable prescriptions with potentially fatal consequences.
Several other jurisdictions have recognized negligence liability of pharmacies. See Riff v. Morgan Pharmacy, 353 Pa.Super. 21, 508 A.2d 1247 (1986) (holding that the pharmacy breached its duty by failing to either warn the patient or notify the prescribing physician of obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff, where a pharmacist filled a prescription for suppositories that, as written by the doctor, did not include limitations on the maximum dosage); Dooley v. Everett, 805 S.W.2d 380, 381-82 (Tenn.Ct.App.1990) (holding that whether a pharmacist has a duty to warn a customer and/or the customer's physician of the potential interaction between two different prescription drugs written by the same physician on two different days and which are filled as written by the same pharmacist on different days is a genuine issue of material fact that precludes summary judgment); Heredia v. Johnson, 827 F.Supp. 1522, 1525 (D.Nev.1993) ("It is not for the pharmacist to second guess a licensed physician unless in such circumstances that would be obviously fatal.") (emphasis added); Pittman v. Upjohn Co., 890 S.W.2d 425, 434 (Tenn.1994) (holding that a pharmacist's duty to warn the customer of a foreseeable risk of injury from a prescription could exist, since the drug's manufacturer urged that certain warnings be given and the pharmacist knew that the physician did not give the warnings); Lasley v. Shrake's Country Club Pharmacy, Inc., 179 Ariz. 583, 880 P.2d 1129, 1131, 1133-34 (1994) (holding that pharmacy had a duty of reasonable care, and that whether the pharmacist's failure to warn that prolonged use of two addictive drugs, in combination, could cause addiction or other adverse consequences violates that duty of care is a question of fact for the jury); Horner v. Spalitto, 1 S.W.3d 519, 520-22 (Mo.Ct.App.1999) (holding that a pharmacist's duty is to "exercise the care and prudence which a reasonably careful and prudent pharmacist would" and while the duty to accurately fill a prescription "may be a pharmacist's only duty in particular cases, [ ] in other cases, a pharmacist's *280 education and expertise will require that he or she do more to help protect their patrons from risks which pharmacists can reasonably foresee"); but see Morgan v. Wal-Mart Stores, Inc., 30 S.W.3d 455, 466-69 (Tex.Ct.App.2000) (holding that pharmacists have no generalized duty to warn of potential adverse reactions to prescription drugs absent some special circumstances, but nonetheless acknowledging that a pharmacy might be liable for negligence if there was "neglect in the face of information on which a reasonably prudent pharmacist would have acted.").
We note that this court's opinion in Pysz v. Henry's Drug Store, 457 So.2d 561 (Fla. 4th DCA 1984), does not require affirming the dismissal of the present action. In Pysz, this court declined to expand McLeod to impose a duty on pharmacists to warn a patient of the addictive qualities of a drug, or to notify a treating physician of the fact that his or her patient is addicted. Nonetheless, we specifically left the window open for future negligence claims, holding that "we limit our affirmance to the facts of this case since we recognize that a factual situation could exist which would support an action for negligence against a druggist who has lawfully filled a prescription issued by a licensed physician." 457 So.2d at 562.
However, we recognize that our opinion in the instant case contradicts prior holdings by the first and fifth districts. See Johnson v. Walgreen Co., 675 So.2d 1036 (Fla. 1st DCA 1996); Estate of Sharp v. Omnicare, Inc., 879 So.2d 34, 35 (Fla. 5th DCA 2004). In Johnson, a case in which a prescription drug customer died from multiple-drug toxicity, the first district found no general duty to warn a customer or his physicians of potential adverse prescription drug reactions or potentially harmful drug interactions where the prescriptions were lawful and filled accurately, but in combination they had lethal effects. 675 So.2d. at 1037. In Estate of Sharp, the fifth district held that a negligence action cannot be sustained against a pharmacy based upon alleged failure to review the customer's drug regimen on a monthly basis; or to account and reconcile the controlled drugs that were to be used by the customer; or to determine from her records that her drug regime was not effective in treating her conditions. 879 So.2d at 36. We therefore certify conflict with Johnson and Estate of Sharp.
Based on the foregoing, we hold that the trial court erred in dismissing the negligence claims against the pharmacies on a motion to dismiss. We reiterate that this holding does not dictate that Powers' claims will necessarily survive a summary judgment motion or prevail at trial, but they are sufficient to survive the motion to dismiss.
Reversed.
WARNER, J., concurs.
HAZOURI, J., concurs specially with opinion.
HAZOURI, J., concurring specially.
I concur with the majority opinion and write only to note that I can see no rational basis for distinguishing between a pharmacy's liability for filling a prescription incorrectly which causes serious injury or death and a pharmacy's liability for filling a combination of prescriptions which the pharmacy knows or should know that because of the adverse interactions of the prescriptions there is a substantial likelihood that they will cause serious injury or death. In the first instance, the pharmacy is negligent in compounding a prescription and in the second instance the pharmacy is negligent in filling a combination of prescriptions, which when taken together will have the same result as compounding the *281 prescription improperly, or at a minimum is negligent in failing to warn its customer of adverse results of taking the prescriptions in combination with each other. In each instance the pharmacy fails to exercise reasonable care.
NOTES
[1] OxyContin/OxyCodone is an opioid agonist and a Schedule II controlled substance with abuse liability similar to Morphine. The FDA issued a warning to health care professionals on July 18, 2001, that OxyContin is not intended for use as a prn (as needed) analgesic and has a high potential for abuse. It is a controlled-release narcotic and a single dose should not exceed every 12 hours for moderate or severe pain. It is not to be taken with other narcotics and treatment should be closely monitored by the prescribing physician.
[2] Percocet is a narcotic prescribed for moderate to severe pain and should not be taken with other narcotics.
[3] Diazepam is for the treatment of anxiety disorders. It should not be prescribed with narcotics such as Percocet or OxyContin.
[4] OxyContin, Percocet and Diazepam all are habit forming and have addictive qualities.
[5] Your Druggist and The Medicine Shoppe dispute the allegations of the number of and which prescriptions each actually filled and for which drugs, but that is beyond the scope of a motion to dismiss.
[6] The pharmacies also argued lack of proximate causation below but proximate cause is not an issue on appeal.