983 So.2d 1175 (2008)
The ESTATE OF Norma J. JOHNSON, by and through Susan JOHNSON, Personal Representative, Appellant,
v.
BADGER ACQUISITION OF TAMPA LLC, and Omnicare, Inc., Appellees.
No. 2D06-697.
District Court of Appeal of Florida, Second District.
April 4, 2008.
Rehearing Denied June 30, 2008.
*1178 Susan B. Morrison of Law Offices of Susan B. Morrison, P.A., Tampa, and Blair N. Mendes of Wilkes & McHugh, P.A., Tampa, for Appellant.
Hala Sandridge of Fowler White Boggs Banker, P.A., Tampa, for Appellee.
CASANUEVA, Judge.
The Estate of Norma J. Johnson, through its Personal Representative, Susan Johnson, appeals the final judgment in favor of Omnicare, Inc., and Badger Acquisition of Tampa, LLC (collectively, "Omnicare"). The trial court, in granting summary judgment in favor of Omnicare, concluded that the Estate failed to demonstrate a legal duty of care owed to the nursing home residents by Omnicare. We agree with the trial court's holding that as a matter of law the Estate failed to establish a legal duty that would support a negligence claim and therefore affirm.

I. FACTS AND PROCEDURAL HISTORY
Mrs. Johnson was approximately 66 years old when she died in 2000. Before her death, she was a resident of the Arbors, a skilled nursing home facility. Omnicare Inc. and Badger Acquisition of Tampa (collectively, Omnicare) had contracts with the Arbors to provide pharmaceutical dispensing and consulting pharmacy *1179 services.[1] After Mrs. Johnson's death, the Estate initially sought recovery through a wrongful death and survival action against the Arbors and another nursing home. The Estate alleged that the Arbors and the other nursing home caused Mrs. Johnson's death.[2] A year later, the Estate initiated the present suit against Omnicare. In its amended complaint, the Estate alleged duties of reasonable care that Omnicare assumed in favor of Mrs. Johnson based on Omnicare's contractual and legal duties to the Arbors. The Estate alleged that Mrs. Johnson was a third-party beneficiary of the contract between the Arbors and Omnicare because she was a resident at the nursing home. The Estate further alleged that Omnicare breached its duty of reasonable care in providing consultant pharmacy services, and as a proximate cause thereof, Mrs. Johnson experienced pain and aggravation of existing medical conditions and ultimately died. The Estate alleged the following acts or omissions as breaches of duty in each count of the amended complaint:
Failing to appropriately monitor the dispensing of medication for Norma J. Johnson; failing to appropriately monitor the proximity in which the same medication was dispensed for Norma J. Johnson; failing to adequately monitor Norma J. Johnson's medication administration; failing to appropriately monitor and address adverse effects and drug interactions of medications for Norma J. Johnson; failing to conduct a thorough and adequate monthly drug regimen review for Norma J. Johnson; failing to adequately and timely account, and reconcile, the controlled drugs to have been utilized for Norma J. Johnson; failing to appropriately monitor and address the undermedication/overmedication of Norma J. Johnson; failing to adequately assess that the dosage of the medication administered was inappropriate for Norma J. Johnson; failing to timely report irregularities in Norma J. Johnson medication reviews to appropriate personnel; failing to adequately develop the appropriate policies and procedures relating to pharmacy services within the facility; failing to provide adequate in-service education and training to nursing home and pharmacy personnel; failing to properly hire, retain, train, and supervise a licensed consultant pharmacist to ensure that the residents, including Norma J. Johnson, received appropriate pharmacy services.
After the parties conducted discovery, Omnicare moved for summary judgment and the trial court entered an order limiting Omnicare's potential liability to only the claims that arose after September 16, 1998. Omnicare moved again for summary judgment on the grounds that the Estate failed to demonstrate that Omnicare owed a legal duty to Mrs. Johnson. Omnicare also argued that the Estate's claims required an impermissible stacking of inferences. The trial court indicated the inference-stacking issue was a "very close call" but denied summary judgment. The trial court then held a hearing in January 2006 on the remaining question of duty. That same month the trial court rendered a summary judgment order holding that Omnicare's consultant pharmacist did not owe a legal duty to Mrs. Johnson. This appeal followed. The only matter before this court is whether the trial court properly granted summary judgment on the question of duty.

*1180 II. ANALYSIS

A. STANDARD OF REVIEW
An appellate court's review of summary judgment on a pure question of law is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). While breach, causation, and damages are typically questions for the finder of fact, the determination of duty is a matter of law. Fla. Dep't. of Corr. v. Abril, 969 So.2d 201, 205 (Fla. 2007); Goldberg v. Fla. Power & Light Co., 899 So.2d 1105, 1110 (Fla.2005); Dudley v. City of Tampa, 912 So.2d 322, 324 (Fla. 2d DCA 2005). "Establishing the existence of a duty under negligence law is a minimum threshold legal requirement that opens the courthouse doors." Williams v. Davis, 974 So.2d 1052 (Fla.2007).

B. DUTY
The Estate argues that Omnicare owed a legal duty to Mrs. Johnson to use reasonable care consistent with the practice of consultant pharmacists providing comparable pharmaceutical services. "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others." McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla.1992). Thus, "where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id. at 503 (citing J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (Fla.1912)).
Our supreme court has recognized four general sources from which a duty may arise:
(1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case.
Clay Elec. Co-op., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003). We begin our discussion of duty by examining the state legislative enactments that require nursing homes to retain the services of a consultant pharmacist. We also examine the administrative licensing regulations for consultant pharmacists. We then consider federal guidelines that require pharmacists to counsel patients and to perform drug regimen review.
(1) Legislative Enactments and Administrative Regulations
The Estate relies in part on the Florida Pharmacy Act, the Florida Administrative Code, and the Omnibus Budget Reconciliation Act of 1990 (OBRA) to demonstrate that Omnicare owed a duty of care. Omnicare contends that these legislative acts fail to establish a legal duty that would support a negligence claim. We agree with Omnicare for the reasons that follow.
a. The Pharmacy Act and the Florida Administrative Code
Florida Statutes and the Florida Administrative Code require a nursing home facility to employ or obtain the services of a state licensed consultant pharmacist. Fla. Admin. Code Ch. 59A-4. Generally, a consultant pharmacist is focused on reviewing the medication regimens of patients who are found in an institutionalized setting such as a nursing home. § 465.0125(1), Fla. Stat. (2001).
The Pharmacy Act defines a "Consultant Pharmacist" as a pharmacist licensed by the Department of Health and "certified as a consultant pharmacist pursuant to s. 465.0125." § 465.003(3), Fla. *1181 Stat. (2001). In reviewing section 465.0125 for indicia of a legal duty to patients, we observe that it instead imposes certain obligations on the consultant pharmacist concerning proper management of the pharmacy activities within the nursing home facility. "The consultant pharmacist shall be responsible for maintaining all drug records required by law and for establishing drug-handling procedures for the safe handling and storage of drugs." § 465.0125(1).[3] This language indicates the role of the consultant pharmacist is largely administrative and is focused on record keeping, inventory, and establishing related procedures for handling medications. Id. Although the consultant pharmacist may analyze laboratory or clinical tests related to nursing home residents, the statute gives the authority to order such tests to the medical director of the facility:
The consultant pharmacist may also be responsible for ordering and evaluating any laboratory or clinical testing when, in the judgment of the consultant pharmacist, such activity is necessary for the proper performance of the consultant pharmacist's responsibilities. Such laboratory and clinical testing may be ordered only with regard to patients residing in a nursing home facility, and then only when authorized by the medical director of the nursing home facility.
§ 465.0125(1).
Further, section 465.003(13) mandates that "nothing in this subsection may be interpreted to permit an alteration of a prescriber's directions, the diagnosis or treatment of any disease, the initiation of any drug therapy, the practice of medicine, or the practice of osteopathic medicine, unless otherwise permitted by law."
The qualifications to become a licensed consultant pharmacist in the administrative regulations also reflect a ministerial role. Promulgated pursuant to the Pharmacy Act, Florida Administrative Code Rule 64B16-26.300, establishes two requirements to become a licensed consultant pharmacist. First, the applicant must hold an active license in good standing as a pharmacist; second, the applicant must successfully complete additional coursework of no fewer than twelve hours. Id. The applicant must also undergo a period of assessment and evaluation under the supervision of a preceptor within a year of the twelve-hour course and complete forty hours of training, twenty-four hours of which must occur on-site and include regimen review, facility review, committee and reports, policy and procedures, principles of formulary management, and professional relationships (i.e. knowledge and interaction of facility administration and professional staff). Id. We note these additional training requirements are specific to pharmacy record keeping and administrative functions that benefit the nursing home.
While the Estate properly concedes that the Pharmacy Act does not create a private cause of action, it suggests that the statute serves as a basis of legal duty and that a violation of that statute is evidence of negligence. See deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla. 1973) (holding that a violation of a statute, imposing upon a railroad a duty to protect *1182 road traffic from colliding with unlighted trains blocking the highway at night at an unlighted crossing, was negligence per se). We agree that the violation of a statute may be evidence of negligence, but such evidence only becomes relevant to a breach of a standard of care after the law has imposed a duty of care. See Ingram v. Hook's Drugs Inc., 476 N.E.2d 881, 884 n. 1 (Ind.Ct.App.1985). The Estate has not demonstrated that the statute or the administrative rules impose a legal duty.
Omnicare contends the absence of a private cause of action indicates that the legislature did not contemplate the enforcement for an individual harm. We agree. Chapter 465 does not contain express language outlining a legal duty to the residents of a nursing home. Omnicare further suggests that the consultant pharmacists do not owe a legal duty to nursing home residents because the consultant pharmacists, under statute, do not control their care. In support of this Omnicare argues that the Pharmacy Act mandates the proper inventory of pharmaceuticals and reflects a legislative intent that procedures be established for the control and dispensing of pharmaceuticals. We agree. "[L]egislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla.1994). "[L]egislative intent is the pole star by which we must be guided in interpreting the provisions of a law." Parker v. State, 406 So.2d 1089, 1092 (Fla.1981) (citing State v. Sullivan, 95 Fla. 191, 116 So. 255 (1928)).
Because chapter 465 places a physician as the gatekeeper to clinical and laboratory testing and prohibits the pharmacist from modifying any drug therapy, we conclude the consultant pharmacist's role is one of an advisor who may assist in, but not direct, patient care. Further, "in the absence of legislative intent to create a private cause of action . . . we decline to create such a cause of action." See Schupbach v. City of Sarasota, 765 So.2d 131, 133 (Fla. 2d. DCA 2000) (quoting City of Sarasota v. Windom, 736 So.2d 741, 742 (Fla. 2d DCA 1999)).
b. Federal OBRA Regulations
The Estate argues that OBRA was designed to "enhance the role of the pharmacists in providing quality medical care through a comprehensive drug utilization review program." 42 U.S.C. § 1396r-8(g). The Estate thus contends the enhanced role of the pharmacist creates a duty that can support a negligence claim. We observe that OBRA primarily regulates how States receive federal funding for Medicare and Medicaid patient benefits. See Concourse Rehab. & Nursing Ctr. Inc. v. Whalen, 249 F.3d 136, 139-40 (2d Cir.2001). We note that provisions of OBRA reflect an intention to improve nursing facility resident care, see e.g., 42 U.S.C. § 1396r(b)(2), and specifically require the states to establish standards for pharmacists to perform patient counseling and record keeping, 42 U.S.C. § 1396r-8(g)(2)(A)(ii)(I)(bb), (cc), and (dd). However, we agree with other courts that have interpreted this statute and concluded that it does not create a private right of action. Nichols v. St. Luke Ctr., 800 F.Supp. 1564, 1567 (S.D.Ohio 1992); see also, Tinder v. Lewis County Nursing Home Dist., 207 F.Supp.2d 951 (E.D.Mo.2001). Interpreting OBRA to create a legal duty in this context would invite an unusual federal encroachment into Florida common law in an area typically a subject of state regulation. See N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 *1183 L.Ed.2d 695 (1995). And like other courts, we are not inclined to infer a congressional intent to preempt state law in healthcare regulation. See id.; see also, Brogdon v. Nat'l Healthcare Corp., 103 F.Supp.2d 1322, 1340 (N.D.Ga.2000) (holding, in part, that the Medicare and Medicaid Acts did not provide a private right of action for nursing home residents to sue the owners or operators of nursing homes).
Because chapter 465 only permits the consultant pharmacist to order additional analysis on a specific patient only when authorized to do so by a physician, and because we find no express language discussing either a legal duty or a private cause of action, we find that no legal duty arises from state or federal statute that would support a private cause of action.
(2) Judicial Interpretations of Legislative Enactments and Administrative Regulations
The Estate contends that this is a case of first impression. We disagree. A case with similar facts was considered by another district court. In Estate of Sharp v. Omnicare, Inc., 879 So.2d 34 (Fla. 5th DCA 2004), an estate sought recovery through both a survival action and a wrongful death claim. The decedent, at the time of her death, was a resident in a nursing home to which Omnicare provided pharmacy services pursuant to contract. The complaint characterized Omnicare as the provider of services as a "consultant pharmacist" and alleged, among other claims, that Omnicare failed to review the decedent's drug regimen and failed to detect that the drug regimen was not effective in the treatment of her medical conditions. The Fifth District held that the consultant pharmacist was not liable for "duties that are ordinarily owed by a physician or caretaker to the patient." Id. at 36. It held that a consultant pharmacist had the same duties as a regular pharmacist as discussed in McLeod v. W.S. Merrell Co., Div. of Richardson-Merrell, Inc., 174 So.2d 736, 739 (Fla.1965). The Fifth District ultimately concluded that the duties of any pharmacist included only the following:
(1) he will compound the drug prescribed; (2) he has used due and proper care in filling the prescriptions . . .; (3) the proper methods were used in the compounding process; (4) the drug has not been infected with some adulterating foreign substance.
Estate of Sharp, 879 So.2d at 35 (quoting McLeod, 174 So.2d at 739). Because the allegations against the consultant pharmacist were outside these enumerated duties, the Fifth District found the pharmacist did not breach any duties owed to the nursing home patient. Id. at 36. The court concluded that "we are unable to discern in the complaint a duty that Omnicare owed to Mrs. Sharp that would give rise to the claims for damages being made by the Estate." Id.
In the instant case, the Estate similarly contends that the consultant pharmacist should have recommended a different treatment for Mrs. Johnson or should have done more to change Mrs. Johnson's regime. In examining this, we appreciate that an alleged failure of the consultant pharmacist to advise the treating physician of issues with Mrs. Johnson's regimen may have been a missed opportunity to increase Mrs. Johnson's level of patient care. However, this only becomes relevant to a discussion of a legal duty if we conclude the consultant pharmacist created or increased the risk to Mrs. Johnson. A legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming others." McCain, 593 So.2d at 503. Allegations of a negligent omission to act do not create a duty *1184 for a party where the risk was put in place by another. See Pysz v. Henry's Drug Store, 457 So.2d 561, 562 (Fla. 4th DCA 1984) (holding that the physician, not the pharmacist, has the duty to know the impact of drug he is prescribing and to properly monitor the patient).
In sum, applying the facts of this case to decisions by our sister courts interpreting the Pharmacy Act and the applicable administrative regulations, we conclude there is no legal duty owed to Mrs. Johnson by the consultant pharmacist.
(3) Other Judicial Precedent
The Estate calls our attention to the conflict certified in Powers v. Thobhani, 903 So.2d 275 (Fla. 4th DCA 2005), with Estate of Sharp and Johnson v. Walgreen Co., 675 So.2d 1036 (Fla. 1st DCA 1996). The Estate argues that the trial court in Powers, relying on Estate of Sharp, also failed to note the distinction between a consultant pharmacist and a retail pharmacist. Our supreme court at first granted review, Your Druggist, Inc. v. Powers, 924 So.2d 812 (Fla.2006), but then dismissed the case, 934 So.2d 1182 (Fla.2006), finding no actual conflict. The Estate contends that the court's determination of no actual conflict means that it recognized there is a difference between the legal duties of a consultant pharmacist from those owed by a retail dispensing pharmacist. We do not reach the same conclusion without a written opinion.
The heart of the Estate's complaint, however, is that a different pharmacy function arises in a nursing home because the consultant pharmacist does not dispense or administer medications to nursing home residents. In support of this it argues the consultant pharmacist's duty to the patient is to perform monthly reviews of the nursing home records, review medication and administration records, review drug regimen records of the patient, provide training and oversight, and establish procedures for the pharmacy. What the Estate fails to recognize is that the recipients of these advisories are the medical director, the treating physician, the director of nursing, and the nursing staff, not the patient.
In Powers, the Fourth District reversed a final judgment dismissing a complaint, concluding that the complaint stated a cause of action for negligence on the part of two pharmacies. 903 So.2d. at 280. Factually, the plaintiff alleged that the treating physician, over a period of six months, prescribed a minimum of six varieties of drugs and narcotics and repeatedly issued prescriptions before the previous prescription should have been depleted. Id. at 276-77. This conduct continued until the day of the decedent's death. Id. at 277. The estate brought a negligence action against the two pharmacies that filled the prescriptions, alleging that each owed the decedent a duty to provide for the decedent's health, safety, and welfare commensurate with the prevailing professional standard of care. Id. The Fourth District Court opined that "Florida appellate courts have recently begun to affirm negligence actions against pharmacists," id. at 278, and held it was error to dismiss the negligence claims. It concluded that McLeod and Dee v. Wal-Mart Stores, Inc., 878 So.2d 426 (Fla. 1st DCA 2004), "confirm that factual circumstances exist under which negligence liability can be imposed on a pharmacy for failing to use due and proper care in filling prescriptions, even if the prescription is filled in accordance with the physician's instruction." 903 So.2d at 278. Under Powers, the Fourth District's conclusion acknowledged "a strong policy basis already exists to supporting a pharmacist's duty to warn customers of the risks inherent in filling certain repeated *1185 and unreasonable prescriptions." Id. at 279. Powers is factually distinguishable from the present case. In Powers the pharmacist interacted directly with the retail customer. In the case at bar, the record indicates that the consultant pharmacist did not interact with Mrs. Johnson but instead dealt only with the nursing home staff, treating physicians, and medical director. In its brief, the Estate acknowledges that the consultant pharmacist did not interact directly with the nursing home residents. The allegations in the present case are substantively different than the scenario described in Powers. Therefore, we are not persuaded by the Estate's policy arguments based on Powers.
In analyzing other judicial precedent and its applicability to the present case, we conclude the administrative posture of the consultant pharmacist does not invite patient reliance or demonstrate a legal duty.
(4) A Duty Arising From the General Facts of the Case; Obligations Arising from Private Contract
The Estate argues that Omnicare undertook the duty to provide a consulting service and that the derelictions in this duty were the proximate cause of the injury to Mrs. Johnson. Beyond arguing that its obligations were owed to the nursing home and not to Mrs. Johnson, Omnicare further responds that it did not create or increase the risk because its consulting role, by statute, is limited to that of an advisor.
The record establishes that Omnicare acted pursuant to a written contract with the nursing home and in compliance with state statutory law and administrative regulations that govern the conduct of consultant pharmacists. Omnicare's contractual obligations specific to its consultant pharmacist services were:
(1) to review, at a minimum once per month, the nursing home resident's nursing charts, medication administration records, narcotics administration records, physician's orders and lab results;
(2) to determine whether the prescribed medications are being administered properly and in conformance with the physician's orders;
(3) to determine whether the prescribed medications are contraindicated for the patient/resident;
(4) to determine whether each patient/resident is responding appropriately to the prescribed medication;
(5) to determine whether other prescribed medicines are efficacious; and
(6) to determine whether the patient/resident is responding favorably to the drug regime or is experiencing adverse reactions.
As noted earlier, these responsibilities, performed with reasonable care by the consulting pharmacist, could serve to increase the level of medical care for the nursing home residents. However, it does not follow that an omission to adequately perform the above contractual obligations would necessarily increase the risk to the residents of the nursing home because each item relates to a pharmaceutical regime prescribed by and ultimately checked by a physician.[4] Because Omnicare contractually *1186 undertook to provide the services, the Estate alleges a duty of care in tort commonly referred to as the "voluntary undertaking doctrine" or "undertaker's doctrine." The Florida supreme court cited the language of the Restatement (Second) of Torts § 324A to explain the undertaker's doctrine as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
Clay Elec. Co-op., Inc. v. Johnson, 873 So.2d 1182, 1186 (Fla.2003).
The supreme court went on to explain that the doctrine applies not just to parties in privity with the other  the parties directly involved in an agreement or undertaking  but also to third parties. Id. "Florida courts have applied the doctrine to a variety of third party, contract-based negligence claims and ruled that the defendants could be held liable, notwithstanding a lack of privity." Id. (footnotes omitted). But the "undertaker's doctrine" is not without limitations. Generally, it is inapplicable where there is no physical harm or where an undertaker "was [not] engaged to perform a service reasonably expected to be relied upon by a stranger to the engagement." Casamassina v. U.S. Life Ins. Co., 958 So.2d 1093, 1102 (Fla. 4th DCA 2007) (citing First Fla. Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9, 12 (Fla.1990)).
Analyzing whether Omnicare had a duty under the Restatement (Second) of Torts § 324A rubric, we first consider whether the consultant pharmacist increased the risk to Mrs. Johnson. We find the scenario in Clay, 873 So.2d 1182, helpful. In Clay, Dante Johnson, a minor pedestrian, was struck and killed by a vehicle beneath an inoperable streetlight. Id. at 1184. Through a contract with the Jacksonville Electric Authority, Clay Electric was being compensated to maintain the lights. Id. The supreme court found that Clay Electric had a duty to maintain the lights, was negligent in its duty, and that its inaction allowed the lighting to fail, making a lit street dark, which increased the risk to pedestrians. Id. at 1187-88. The court hypothesized that if Clay would have instead contracted to install, rather than maintain, the lights and failed to perform that duty, then its negligence would not have increased the risk. Id. at 1187.
In Mrs. Johnson's case, Omnicare did not qualify as an "undertaker" for purposes of applying this doctrine. Any risk to Mrs. Johnson from a pharmaceutical regime was created by the physician who prescribed the medication or the nursing staff that delivered it to Mrs. Johnson. The majority of the Estate's allegations involve situations where the consultant pharmacist failed to recommend a different treatment for Mrs. Johnson or failed to be persistent enough in his recommendations to convince the treating physician to alter Mrs. Johnson's treatment. Omnicare undertook the role of providing consultant *1187 pharmacist services to the nursing home, but any decisions impacting a change to a resident's pharmaceutical regime were ultimately made by a treating physician or medical director of the nursing home.
Under even the lenient standard set in Clay, it is difficult in the present case to establish that the patient relied on the consultant's undertaking in a manner that would establish a legal duty. In Clay, the court determined that the victim could have relied on the street lights working even though (1) the victim was not aware of the third party's undertaking and (2) the victim did not allege reliance in their complaint. The facts of this case do not lend themselves to such an outcome because there is no evidence that Mrs. Johnson relied on, or even knew about, the consultant pharmacist. In general, patients do not rely on their pharmacist to alter their medication; instead, they rely on their licensed doctors. See McLeod, 174 So.2d at 739.
The voluntary undertaking doctrine, as a basis for a legal duty owed by a pharmacist, has been rejected by another district court where the pharmacist was required by statute and administrative law to provide counseling. In Dent v. Dennis Pharmacy, Inc., 924 So.2d 927 (Fla. 3d DCA 2006), the court recognized that where one undertakes to act, even when under no obligation to do so, the actor becomes obligated to act with reasonable care. However, where the pharmacist is required by law to provide counseling and information, there is nothing "voluntary" in the undertaking. Id. at 929. Further, in the absence of any other allegation such as patient's reliance, the court concluded the pharmacist's conduct did not broaden the zone of foreseeable risk to an unidentified third party. Id. at 929-30. Thus under these factual circumstances, there could be no recognizable duty. Id. at 930.
Under the factual circumstance of the present case, we also do not observe any patient reliance. The record reflects there was no actual contact between Mrs. Johnson and the consultant pharmacist. There is also no evidence that Mrs. Johnson was aware of the consultant pharmacist record-checking function at the nursing home. It is undisputed that pharmaceuticals were prescribed by a treating physician, dispensed by the nursing home pharmacist, and delivered to Mrs. Johnson by the nursing staff. The record contains the depositions of the three consultant pharmacists assigned to the Arbors during Mrs. Johnson's residence. Each consultant pharmacist described their drug regimen review activities and explained how their recommendations were documented. Common in the testimony of all three is that: a consultant pharmacist visited the Arbors monthly, reviewed the residents' charts, and prepared written advisories to the treating physician or director of nurses on any observed irregularity in the charts. The review functioned as advisory to either the treating physician, medical director, or the nursing staff. Each of the consultant pharmacists acknowledged they had no authority to alter or discontinue a resident's pharmacy regimen. In fact, there is no evidence that the consultant pharmacist undertook any additional duties to Mrs. Johnson than what was required by statute or covered in the contract between Omnicare and the Arbors. Because what was undertaken never exceeded the statutory requirement of a consultant pharmacist, we do not find any voluntary assumption of duties that would give rise to a legal duty to the residents, where a question of fact might preclude summary judgment.
*1188 Moreover, establishing reliance in the present case would stretch the undertaker's doctrine beyond that described in Clay. The Estate's amended complaint alleged various failures on the part of Omnicare to monitor Mrs. Johnson's medication regimen. However, the administratively mandated inherent benefit of additional drug regimen review does not, by itself, create a legal duty nor does it expand the consultant pharmacist's role beyond that of an administrative advisor. Again, the Pharmacy Act specifically restricts a pharmacist from altering a prescriber's directions, diagnosing or treating any disease, initiating any drug therapy, or practicing medicine. See § 465.003(13), Fla. Stat. (2001).
We conclude there was a nondelegable duty placed upon the physicians to properly prescribe Mrs. Johnson's medication, upon the pharmacists to properly dispense the medication, and upon the nursing staff to properly deliver said medication to Mrs. Johnson. Mrs. Johnson could reasonably have relied on such roles for her healthcare. Nursing homes have a nondelegable duty to provide appropriate care to their residents. See NME Props. Inc. v. Rudich, 840 So.2d 309, 312-13 (Fla. 4th DCA 2003); cf. U.S. Sec. Serv. Corp. v. Ramada Inn, Inc., 665 So.2d 268, 270 (Fla. 3d DCA 1996) (holding that nondelegable duties derive from the idea that "one cannot contract away ultimate legal responsibility for certain tasks one is obligated to perform").
In sum, there is no indication that Mrs. Johnson relied on the consulting pharmacist. If anything, she would have relied on her own or the nursing home's pharmacist to correctly and timely fill the prescription. These are the duties McLeod v. W.S. Merrell Co., 174 So.2d 736 (Fla.1965), sets out for pharmacists. Based on our review of applicable judicial decisions and the circumstances present here, this court declines to find a duty grounded on an inferred reliance by Mrs. Johnson on the consultant pharmacist based merely upon her residence in the nursing home.

CONCLUSION
We agree with the trial court's holding that there is no duty assumed by Omnicare that "as a matter of law would flow to the benefit of the plaintiff" and would give rise to a private cause of action. While the "undertaker's doctrine" may operate to create a legally recognizable duty in tort, it is not applicable on the facts of this case where the consultant pharmacist only undertook what was required by statute. The consultant pharmacist contracted with the Arbors to review drug regimens, to establish procedures and training related to the proper inventory, control, and delivery of the medications prescribed to the residents by treating physicians as part of the statutory requirement for nursing homes. Therefore, the consultant pharmacist's obligations ran to the Arbors. In the absence of a legislatively created duty of care, we cannot enhance the consultant pharmacist's contractual obligations to the Arbors into a legal duty owed to Mrs. Johnson.
Affirmed.
SCHWARTZ, ALAN, Associate Senior Judge, Concurs specially with opinion.
SILBERMAN, J., Concurs specially with opinion.
SILBERMAN, Judge, Specially concurring.
I agree with the majority opinion and the decision to affirm the trial court's summary judgment in favor of Omnicare and Badger. It is well established "`that the burden to prove the non-existence of genuine triable issues is on the moving party, *1189 and the burden of proving the existence of such issues is not shifted to the opposing party until the movant has successfully met his burden.'" Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138, 1140 (Fla. 2d DCA 2000) (quoting Holl v. Talcott, 191 So.2d 40, 43-44 (Fla. 1966)). Based on the record presented, Omnicare and Badger met their burden to establish the nonexistence of genuine issues of material fact, and the Estate did not carry its burden to prove the existence of such issues. However, I am not convinced that a consulting pharmacist can never be liable to a nursing home resident. Depending on the conduct of a consulting pharmacist in relation to the provision of services or medications to a nursing home resident, the pharmacist may indeed have liability for harm suffered by the resident.
SCHWARTZ, Associate Senior Judge, Specially concurring.
Like Judge Silberman, I agree to affirmance only because I believe that that result is required by ordinary summary judgment principles. More specifically, I conclude, even assuming both the existence of a cognizable duty of care created by either statute, the common law or both, and evidence of a breach of that duty by the defendant,[5] it has been conclusively established that the plaintiff cannot show at trial, as it would be bound to do, that any such breach was a legal cause of Mrs. Johnson's injury or death. Affirmance is therefore in order. See Sims v. Helms, 345 So.2d 721 (Fla.1977); see also Borne v. Lawnwood Reg'l Med. Ctr., Inc., 767 So.2d 542 (Fla. 4th DCA 2000), review denied, 791 So.2d 1095 (Fla.2001); DeMesme v. Stephenson, 498 So.2d 673 (Fla. 1st DCA 1986); Maddox v. Tallahassee Mem'l Reg'l Med. Ctr., 438 So.2d 1041 (Fla. 1st DCA 1983); Henriquez v. Publix Super Markets, Inc., 434 So.2d 53 (Fla. 3d DCA 1983); Pope v. Cruise Boat Co., 380 So.2d 1151, 1154 (Fla. 3d DCA 1980) (Schwartz, J., concurring specially); Thomas v. Berrios, 348 So.2d 905 (Fla. 2d DCA 1977).
NOTES
[1] Omnicare is Badger's indirect parent corporation.
[2] The Estate settled its lawsuit against the Arbors and the other nursing home in September 2004.
[3] We note the legislature's use of "shall" in describing the consultant pharmacist's obligation to maintain drug records and to establish drug handling procedures to imply a legislative intent that such administrative activities are the focus of the role. See § 465.0125(1). We observe the use of "may" in reference to laboratory or clinical testing duties. Id. When interpreting a statute, "shall" is generally read as being mandatory while "may" suggests a permissive term. See Shands Teaching Hosp. & Clinics, Inc. v. Sidky, 936 So.2d 715 (Fla. 4th DCA 2006).
[4] A physician prescribes a pharmaceutical based on his careful consideration and personal knowledge of the patient "balancing . . . the risks and benefits of a given drug." Walls v. Alpharma USPD, Inc., 887 So.2d 881, 885 (Ala.2004) (quoting Eldridge v. Eli Lilly & Co., 138 Ill.App.3d 124, 92 Ill.Dec. 740, 485 N.E.2d 551, 552 (1985)). Cases that contemplate applying the learned intermediary doctrine to pharmacists reason "that imposing a duty to warn on the pharmacist would intrude on the doctor-patient relationship and would force the pharmacist to practice medicine without a license." Id.
[5] Because it is unnecessary to do so, I do not reach and express no opinion on these difficult issues.